Revised March 22, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50735

_____

BARRY ALLEN FISHER,

                              Petitioner-Appellant,

        v.

STATE OF TEXAS,

                              Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

March 18, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

KING, Chief Judge:

    Barry Fisher appeals the district court's denial of his writ
of habeas corpus, in which he alleged that the prosecution's
peremptory strike of a venire member based, <u>inter alia</u>, on the
venire member's religion violated the Equal Protection Clause.
The State of Texas contends on appeal that this court should
affirm based on the doctrines of procedural bar or exhaustion of
remedies, or pursuant to the prohibition against creating new
constitutional rules of criminal procedure on habeas review under
<u>Teague v. Lane</u>, 489 U.S. 288 (1989), despite its failure to raise

all three of these arguments to the district court. We affirm the denial of habeas relief pursuant to Teague.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Barry Fisher was sentenced to a fifteen-year term of imprisonment on July 22, 1988 after he pleaded guilty to aggravated robbery. While he was serving this prison term, he was charged with the felony offense of aggravated assault of a correctional officer, to which he pleaded not guilty. During voir dire, Fisher brought a Batson motion alleging that the jury was unconstitutionally selected because the prosecution struck a venire member, Jose Cardona, solely because of his race. See Batson v. Kentucky, 476 U.S. 79 (1986). The trial judge found that Fisher had asserted a prima facie case of racial discrimination, and the prosecuting attorney was given an opportunity to explain why Cardona was struck. After being sworn, the prosecutor articulated three non-race-based reasons for striking Cardona: first, that he was a case worker for the American Red Cross, second, that he "has a Roman Catholic background," and third, because he had a back injury. The prosecutor stated that she considered the third factor, the back injury, to be the most important because she was concerned that Cardona would compare his back injury to the non-serious bodily injury suffered by the correctional officer and be unable to consider the entire range of possible punishments, which included life imprisonment. The prosecuting attorney also stated that she

2

struck three other jurors because they stated in their jury questionnaires that they had sustained injuries in the past. The trial court denied the Batson motion, stating that the prosecution had articulated at least one non-race-based reason for challenging Cardona.

The jury found Fisher guilty of the assault against the correctional officer, and he was sentenced to a thirty-year term of imprisonment to be served after his sentence for his original conviction. He then appealed his conviction to the Texas Court of Appeals, raising only the Batson issue. On appeal, Fisher argued that the trial court erred in denying his Batson motion based on Cardona's race, and that Cardona's religious affiliation could not serve as a race-neutral explanation for the state's peremptory strike.

The Court of Appeals affirmed Fisher's conviction in an unpublished opinion on August 31, 1995. See Fisher v. State, No. 10-94-212-CR (Tex. App.--Waco Aug. 31, 1995, pet. ref'd) (not designated for publication). The court rejected Fisher's race-based Batson challenge on the ground that the state had articulated a sufficient race-neutral explanation for the strike, i.e., Cardona's back injury. See id. at 6-7. The court did not reach the question of discrimination based on religion because "Fisher's sole objection at trial was that Cardona had been struck from the jury because of his race," and Fisher acknowledged on appeal that "he did not preserve a religion-based

3

strike as a separate claim of error." Id. at 6.  Nonetheless, the court addressed the merits of the religion-based claim in a footnote, finding it meritless due to the state's articulation of a sufficient religion-neutral reason for the challenge.  See id. at 6 n.3.  Fisher's petition for discretionary review by the Texas Court of Criminal Appeals was refused on January 17, 1996. Fisher has not filed any state applications for writ of habeas corpus challenging the assault conviction.

Proceeding in forma pauperis and pro se, Fisher filed an application for habeas relief pursuant to 28 U.S.C. § 2254.  In his application, Fisher challenged his conviction on four grounds:  (1) that he had been denied a fair trial by the prosecutor's use of a peremptory strike against Cardona, (2) that he had been denied his right to an appeal when the Texas Court of Criminal Appeals denied his request for discretionary review, (3) that his appellate counsel had been ineffective for requesting leave to withdraw under Anders v. California, 386 U.S. 738 (1967), and (4) that the prosecution had failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963).  Fisher conceded that he had not raised issues two through four in any state court.

The state moved to have Fisher's application dismissed for failure to exhaust state court remedies.  Fisher filed an amended application alleging only the Batson issue, and the state then moved for summary judgment on that issue, solely on the basis

4

that the prosecutor had offered a sufficient race-neutral explanation for striking Cardona.[1]  The magistrate recommended that the district court dismiss Fisher's application, finding that the prosecution had provided a sufficient non-race-based reason for the peremptory strike of Cardona.  In addition, the magistrate judge concluded that Fisher's claim would lack merit even if it was based on exclusion due to a venire member's religion, stating that exclusion of venire members on the basis of their religion does not implicate the Equal Protection Clause. The district court adopted the magistrate's recommendation, dismissed Fisher's application, and denied Fisher's request for a certificate of appealability (COA).  The district court did, however, grant Fisher leave to proceed in forma pauperis on appeal.  This court granted Fisher a COA limited to the issue of whether "the exclusion of a venire member based on religion was in violation of the Equal Protection Clause."

Fisher timely appealed, filing a brief that obliquely raises the issue upon which this court granted a COA.  As we must, we

---

[1] In its motion for summary judgment, the state did not address whether the Equal Protection Clause was implicated by the prosecutor's articulation of religion as one reason for striking Cardona.  The state apparently did not construe Fisher's habeas application as raising a religion-based equal protection argument, and it therefore only addressed the issue of whether the prosecution had articulated a sufficient race-neutral explanation for the strike.  Shortly after the state filed its summary judgment motion, Fisher filed a motion for summary judgment in which he argued explicitly that his jury was unconstitutionally selected because the prosecutor based a peremptory challenge on a venire member's religion.

construe Fisher's pro se filings liberally.  See Guidroz v. Lynaugh, 852 F.2d 832, 834 (5th Cir. 1988).

## II.  DISCUSSION

We review the district court's grant of summary judgment de novo.  See Kopycinski v. Scott, 64 F.3d 223, 225 (5th Cir. 1995).

The state urges five different grounds on which it argues we can affirm the district court's denial of habeas relief.  The first two grounds concern the Texas Court of Appeals's decision denying Fisher relief on direct appeal.  First, the state argues that the state court's disposition of Fisher's Batson claim was an adjudication on the merits entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The state argues that Fisher has not rebutted the presumption of correctness that we must afford a state court's findings and conclusions under AEDPA, and therefore that Fisher is not entitled to relief.  Second, the state argues alternatively that the state court disposed of Fisher's Batson claim on an adequate and independent state ground, i.e., because Fisher did not argue to the trial court that the peremptory challenge at issue was impermissibly premised on the venire member's religion.  The state therefore urges us to conclude that we are procedurally barred from considering Fisher's claim, despite the fact that the state did not present the procedural bar argument to the district court.

6

Third, the state contends we can dismiss Fisher's habeas application because Fisher has failed to exhaust his state court remedies by bringing a state habeas petition alleging that a religion-based peremptory strike violates the Equal Protection Clause. Again, the state admits that it failed to argue that Fisher's religion-based Batson claim was unexhausted to the district court.

Fourth, the state argues that, even if we review the merits of Fisher's equal protection claim, he is not entitled to relief because the exclusion of a venire member based in part on the venire member's religion does not run afoul of the Equal Protection Clause.

Finally, the state contends that even were we to determine that religion-based peremptory strikes violate the Equal Protection Clause, Fisher is not entitled to retroactive application of this new rule of law under Teague v. Lane, 489 U.S. 288 (1989). We can affirm on any ground supported by the record. See Emery v. Johnson, 139 F.3d 191, 195 (5th Cir. 1997), cert. denied, 119 S. Ct. 418 (1998).

**A.  Deference to State Court's Adjudication on the Merits**

Fisher filed his § 2254 habeas application on September 9, 1996, and it is therefore subject to AEDPA. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the amended § 2254(d), Fisher may not obtain federal habeas corpus relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The state argues that the footnote in the Texas Court of Appeals's decision alternatively disposing of Fisher's claim was an adjudication on the merits entitled to deference under AEDPA, and that, because no clearly established federal law, as determined by the Supreme Court, establishes that religion-based peremptory strikes violate the Equal Protection Clause, we must defer to the state court's disposition and deny relief.

We disagree with the state's characterization of the Texas Court of Appeals's decision as an adjudication on the merits. In Green v. Johnson, 116 F.3d 1115, 1120-21 (5th Cir. 1997), we considered whether a state court decision regarding a petitioner's claims was a "resolution on the merits," the pre-AEDPA equivalent of an "adjudication on the merits."[2] In that

---

[2] Under pre-AEDPA law, factual findings made by a state court were presumed correct unless the applicant established, inter alia, "that the merits of the factual dispute were not resolved in the State court hearing." 28 U.S.C. § 2254(d)(1)(West 1994); see Lara v. Johnson, 141 F.3d 239, 241 (5th Cir.) (stating that under pre-AEDPA law, state court findings of fact are entitled to deference "unless the petitioner

case, we identified three factors relevant to the determination of whether a resolution by a state court was on the merits:

> (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits.

Id. at 1121.

A review of the opinion rendered by the Texas Court of Appeals in this case clearly reveals that the state court did not adjudicate the merits of Fisher's Batson-religion claim. The state court explicitly decided the religion issue on waiver grounds, stating that it did not need to "reach the question of discrimination based on religion," because Fisher had failed to object on religion grounds at his trial. Fisher, No. 10-94-212-CR, at 6. The Texas Court of Appeals's awareness of, and explicit reliance on, a procedural ground to dismiss Fisher's claim is determinative in this case, and we therefore cannot apply the AEDPA deference standards to the state court's findings and conclusions. See Green, 116 F.3d at 1121 ("'Resolution on the merits' is a term of art in the habeas context that refers . . . to the court's disposition of the case--whether substantive or procedural."); McLee v. Angelone, 967 F. Supp. 152, 156 (E.D.

---

demonstrates that the state courts failed to resolve the claims on the merits"), modified on other grounds, 149 F.3d 1226 (5th Cir. 1998).

9

Va. 1997) (stating that to qualify as an adjudication on the merits under AEDPA, a state court decision "must be: [1] a state court adjudication, [2] on the merits, [3] in formal state court proceedings, and [4] the adjudication must have resulted in a decision"), appeal dismissed, 139 F.3d 891 (4th Cir. 1998); see also Larry W. Yackle, A Primer on the New Habeas Corpus Statute, 44 BUFF. L. REV. 381, 420-21 & n.129 (1996) (stating that state court decision that claim was procedurally barred cannot be adjudication on the merits, for purposes of AEDPA). In sum, because the Texas Court of Appeals rested its decision to deny habeas relief to Fisher on procedural grounds, and did not need to decide the question of whether the exclusion of a venire member based in part on the venire member's religion violates the Equal Protection Clause, its adjudication was not "on the merits" for purposes of AEDPA. We therefore decline the state's invitation to affirm the district court's grant of summary judgment on this ground.

## B. Application of Procedural Bar

The state's second argument is that we should exercise our discretion and find Fisher's Batson claim to be procedurally barred. It is true, as the state points out, that it is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural

10

default.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995).  A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim.  See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Ellis v. Lynaugh, 873 F.2d 830, 838 (5th Cir. 1989).

As we explained above, the Texas Court of Appeals explicitly denied Fisher relief on his Batson-religion claim on procedural grounds, namely, because he had not objected on those grounds to the trial court.  This court has consistently held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims.  See Sharp v. Johnson, 107 F.3d 282, 285-86 (5th Cir. 1997); Nichols v. Scott, 69 F.3d 1255, 1280 n.48 (5th Cir. 1995).  Thus, at first glance, Fisher's application seems easily dismissed on procedural bar grounds.

The problem with applying the procedural bar to this case, as the state admits in its briefs to this court, is that the state did not argue to the district court that Fisher's claim was procedurally barred.  A state waives a procedural bar defense by failing to raise the defense in the district court.  See Emery, 139 F.3d at 195 n.4 ("If the state does not plead procedural bar in the district court, it is waived.") (citing United States v. Marcello, 876 F.2d 1147, 1153 (5th Cir. 1989)).  The state urges us not to accept its waiver of the bar, and, notwithstanding its

11

failure to present this argument to the district court, it urges us to apply the bar and affirm the dismissal of Fisher's application. In doing so, the state argues that this court has discretion to find a petitioner's claim procedurally barred even where the state failed to raise the argument in the court below.

In support of this assertion, the state presents two principal arguments. First, the state points to <u>Trest v. Whitley</u>, 94 F.3d 1005, 1007-09 (5th Cir. 1996), <u>vacated</u>, 118 S. Ct. 478 (1997), which it contends is still valid law for the proposition that a court of appeals has discretion to raise the issue of whether a claim is procedurally barred <u>sua sponte</u>, even if the respondent has not raised the issue in the district court or on appeal. Second, the state analogizes this situation to those in <u>Blankenship v. Johnson</u>, 118 F.3d 312, 316 (5th Cir. 1997), and <u>Graham v. Johnson</u>, 94 F.3d 958, 970 (5th Cir. 1996), in which we stated that we have discretion to apply the <u>Teague</u> and exhaustion defenses despite the state's waiver. The state argues that our recent opinion in <u>Magouirk v. Phillips</u>, 144 F.3d 348 (5th Cir. 1998), supports the extension of <u>Blankenship</u> and <u>Graham</u> to the procedural bar context because in that case we partially based our conclusion that a district court has authority to find a claim procedurally barred <u>sua sponte</u> on similarities to the <u>Teague</u> and exhaustion defenses. <u>See</u> <u>id.</u> at 357-59.

12

The Supreme Court held in Trest v. Cain, 118 S. Ct. 478, 480 (1997), that a court of appeals is not required to invoke a petitioner's potential procedural default sua sponte. It is possible, as the state argues, that despite Trest's rejection of a duty to raise a procedural bar defense sua sponte, we have discretion to do so. See id. (declining to address question of whether "the law permitted (though it did not require) the Fifth Circuit to raise the procedural default sua sponte").

Of course, the situation at bar and the issue as presented in Trest are slightly different. We need not raise the procedural bar issue sua sponte in this case because the state has already suggested in its appellate briefs that we apply the bar; instead, the issue is whether we have discretion to apply the procedural bar when the state has failed to address the issue to the district court. The state may be correct that we have such discretion, just as we may have discretion to raise the issue sua sponte. See Washington v. James, 996 F.2d 1442, 1451 (2d Cir. 1993) (stating that court of appeals may raise the procedural bar issue sua sponte despite the fact that the issue was not addressed in the district court); cf. Blankenship, 118 F.3d at 316 (stating that a court of appeals has discretion to apply the Teague defense despite the state's implicit waiver); Graham, 94 F.3d at 970 (stating that a court of appeals has discretion to require exhaustion of state court remedies despite state's waiver of the requirement). We conclude, however, that

13

even if we do have discretion in some circumstances to apply the procedural bar where the state has waived the defense in the district court, we will not exercise such discretion in this case.

We base this conclusion upon the same principles that we discussed in Magouirk in the context of when a district court should exercise its discretion to consider a procedural bar defense sua sponte. See 144 F.3d at 359-60. In that case, we noted the familiar rule that "[p]rocedural default may be excused upon a showing of cause and prejudice or that application of the doctrine will result in a fundamental miscarriage of justice." Id. at 359 (citing Coleman, 501 U.S. at 748-50). We stated that a district court, in deciding whether to apply a waived procedural bar defense sua sponte, should consider whether the habeas petitioner has been given notice that procedural default will be an issue for consideration, whether the petitioner has had a reasonable opportunity to argue against the application of the bar, and whether the state intentionally waived the defense. See id. at 359-60. We concluded that

> [t]he court's exercise of its discretion should not be automatic, but must in every case be informed by those factors relevant to balancing the federal interests in comity and judicial economy against the petitioner's substantial interest in justice. Once a federal district court elects to raise procedural bar sua sponte, the court should consider whether justice requires that the habeas petitioner be afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal. Likewise, the district court should consider whether the state's

14

> failure to raise the defense is merely inadvertence or the result of a purposeful decision to forego the defense.

Id. at 360.

Unlike in Magouirk, in which we found that the district court did not abuse its discretion in raising the procedural default sua sponte, see id. at 360-61, consideration of these factors leads us to refrain from excusing the state's failure to address the default issue to the district court. Fisher has had absolutely no notice that procedural bar would be an issue for consideration by this court. He therefore has had no reasonable opportunity to argue either that the state appellate court did not reject his claim on an adequate and independent state law ground, or that one of the exceptions to the doctrine applies. Despite the state's contention that its waiver of this issue was inadvertent, these concerns lead us to conclude that even if the state is correct that we have discretion to overlook its waiver of the procedural bar issue in the district court, exercise of that discretion is not warranted in this case. But cf. Windham v. Merkle, 163 F.3d 1092, 1100-01 (9th Cir. 1998) (raising procedural bar sua sponte on Batson-gender claim, where habeas petitioner argued in state trial court only that potential juror was struck on racial grounds, but remanding to district court for cause-and-prejudice determination). We therefore decline to affirm the district court's dismissal of Fisher's application on procedural bar grounds.

15

## C. Exhaustion of State Court Remedies

In its third argument, the state contends that Fisher did not present a religion-based <u>Batson</u> challenge on direct appeal, that Fisher's only arguments on direct appeal were that Cardona was struck because of his race and that his religion could not serve as a valid, race-neutral reason for the strike, and that, in light of this characterization of his direct appeal and his failure to seek habeas relief in state court, Fisher has not exhausted his state court remedies. The state concludes that we should therefore affirm the dismissal of Fisher's claim on exhaustion grounds.

Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief. <u>See</u> <u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court. <u>See</u> <u>id.</u>

Like the procedural bar argument, the state failed to present this argument to the district court. Generally, we will honor a state's waiver of the exhaustion requirement. <u>See</u> <u>Graham</u>, 94 F.3d at 970. The state argues on appeal that its waiver was inadvertent. The state's motion for summary judgment in the district court stated that it understood Fisher to be raising only a race-based <u>Batson</u> claim in his federal habeas

application.  The state insists on appeal that it only knowingly waived the exhaustion requirement with respect to a race-based Batson claim, which Fisher clearly raised on direct appeal, and not with respect to the subject on which we granted Fisher a COA, a religion-based Batson claim.  Cf. 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").  Even assuming that the state's failure to raise this argument to the district court was inadvertent, we decline to affirm the district court's dismissal of Fisher's application on this ground.

When the state has failed to raise the exhaustion requirement, it is "appropriate for the court of appeals to take a fresh look at the issue."  Granberry v. Greer, 481 U.S. 129, 134 (1987).  Our consideration should include "whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim."  Id.

This court has observed that the exhaustion requirement may be excused when seeking a remedy in state court would be futile. See Graham, 94 F.3d at 969.  The Texas Court of Criminal Appeals, sitting en banc, recently rejected the merits of Fisher's claim that religion-based peremptory strikes violate the Equal Protection Clause.  See Casarez v. State, 913 S.W.2d 468, 496

17

(Tex. Crim. App. 1995) (on rehearing).  In overruling an opinion

rendered by a panel of the court, the en banc state court

concluded:

> [W]e do not read Supreme Court jurisprudence yet to
> condemn exclusion on the basis of belief.  We therefore
> hold that the interests served by the system of
> peremptory challenges in Texas are sufficiently great
> to justify State implementation of choices made by
> litigants to exclude persons from service on juries in
> individual cases on the basis of their religious
> affiliation.

Id.  The futility exception applies when, as here, the highest

state court has recently decided the same legal question

adversely to the petitioner.  See Padavich v. Thalacker, 162 F.3d

521, 522 (8th Cir. 1998).  Our decision not to affirm the

district court's dismissal of Fisher's application on exhaustion

grounds is further supported by the fact that Fisher's Batson

claim in the Texas Court of Appeals, even assuming the state's

characterization of that claim is correct, forced the state court

to confront the validity of basing a peremptory strike in part on

the venire member's religious beliefs.  In order for a claim to

have been "fairly presented" to a state court to fulfill the

exhaustion requirement, the applicant "need not spell out each

syllable of the claim before the state court." Whitehead, 157

F.3d at 387.  Instead, a federal claim must only be the

"substantial equivalent" of one presented to the state courts.

Id.

18

In sum, the interests of comity and federalism will be better served by excusing Fisher's failure to exhaust his state court remedies. The highest criminal court in Texas has rejected the very argument Fisher raises, a state appellate court has considered the issue explicitly on direct appeal, and the state failed, though inadvertently, to raise the exhaustion requirement in the district court. In addition, because, as we discuss infra, Fisher's claim is barred by Teague, judicial efficiency makes it appropriate to dispose of Fisher's claim without requiring additional litigation. See Liegakos v. Cooke, 106 F.3d 1381, 1388 (7th Cir. 1997) (stating that remand to determine whether petitioner had exhausted state court remedies was unnecessary because claim was either exhausted or barred by Teague); cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Granberry, 481 U.S. at 135 (stating that "if it is perfectly clear that the applicant does not raise even a colorable federal claim," a state's interest is better served by declining to enforce exhaustion requirement). We therefore decline to affirm the district court's dismissal of Fisher's application on exhaustion grounds.

## D. **Teague** Bar

19

We now turn to the issue on which we originally granted Fisher a COA, i.e., whether a religion-based peremptory strike violates the Equal Protection Clause. "Because this case is before us on . . . a petition for a writ of federal habeas corpus, we must determine, as a threshold matter, whether granting him the relief he seeks would create a 'new rule' of constitutional law," and therefore, unless an exception applies, whether Fisher's application is barred by Teague. Graham v. Collins, 506 U.S. 461, 466-67 (1993) (internal quotation marks omitted); see Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

### 1. Applicability of Teague

We first pause to consider whether, given the unique procedural posture of Fisher's claim, the Teague bar against creating new constitutional rules of criminal procedure on collateral review applies. There has been much discussion by courts and commentators concerning whether, or how, Teague applies in the context where a federal court must defer to a state court's adjudication on the merits. Compare Drinkard v. Johnson, 97 F.3d 751, 766 (5th Cir. 1996) (questioning whether § 2254(d)(1) "is essentially only a codification of Teague v. Lane, 489 U.S. 288 (1989), and thus constitutes no change in federal habeas law"), cert. denied, 117 S. Ct. 1114 (1997), with Sharad Sushil Khandelwal, Note, The Path to Habeas Corpus Narrows:  Interpreting 28 U.S.C. § 2254(d)(1), 96 MICH. L. REV.

20

434, 440 (1997) ("The 1996 amendment to § 2254(d)(1) should be read to adopt the Teague rule of retroactivity."). We need not consider this question, however, as there was no state court adjudication on the merits in this case. Instead, the question before us is whether federal courts may apply the Teague bar when there has not been a state court adjudication on the merits, and the petitioner's claim is not dismissed as procedurally barred.

We conclude that Teague still applies in this context. The Supreme Court implicitly agreed with this position in explaining its denial of a petition of certiorari in Breard v. Greene, 118 S. Ct. 1352 (1998). See Kent S. Scheidegger, Habeas Corpus, Relitigation, and the Legislative Power, 98 COLUM. L. REV. 888, 959 n.500 (1998) (discussing Breard). In Breard, the petitioner had never presented his claim to the state courts that his conviction should be overturned based on violations of the Vienna Convention, see 118 S. Ct. at 1354, and the Court explicitly stated that AEDPA applied to his petition, see id. at 1355. The Court concluded that the petitioner procedurally defaulted his claim by not raising it in state court. See id. Rejecting the petitioner's argument that his default was excused by the novelty of his claim, the Court stated that even "[a]ssuming that were true, such novel claims would be barred on habeas review under Teague." Id. Breard thus indicates that Teague still applies to a petitioner's claim that has not been adjudicated on the merits by a state court and that is not procedurally barred.

21

The Fourth Circuit has also determined that the Teague bar may be applied to claims in this posture.  In Green v. French, 143 F.3d 865, 874 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999), that court stated that

> [T]he anti-retroactivity principles of Teague would appear applicable in contexts where the limitations of section 2254(d)(1) are not, such as where a habeas petitioner's constitutional claim is not properly raised in state court and therefore not "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), but where a court may nonetheless conclude that the failure to properly raise the claim in state court is not excused (or perhaps, excused but Teague-barred) because the claim relies upon a new rule of constitutional law not made retroactive on collateral review.

We agree with the Fourth Circuit's analysis in Green that federal courts may apply the Teague bar to a habeas petitioner's claims that were not adjudicated on the merits by a state court and are also not procedurally barred.  See also Liegakos, 106 F.3d at 1385-86 (applying Teague bar to petitioner's habeas claim where AEDPA applied to petition and claim was not adjudicated on merits by state court); Scheidegger, supra, at 959 n.500 ("The new statute does not apply when the state court has never addressed the merits, but Teague does.").

## 2.  Application of Teague

Like the procedural bar and exhaustion of remedies issues, the state failed to argue to the district court that Fisher's Batson-religion claim was Teague barred, although it does make the argument on appeal.  It is clear that we have discretion to

22

consider a <u>Teague</u> defense despite a state's implicit waiver.  <u>See</u>
<u>Caspari</u>, 510 U.S. at 389; <u>Blankenship</u>, 118 F.3d at 316.  In the
interests of finality and judicial economy, we choose to exercise
our discretion and consider whether Fisher's claim is barred.
<u>See</u> <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1041-42 (11th Cir.
1994); <u>see also</u> <u>Wilkerson v. Whitley</u>, 28 F.3d 498, 504 (5th Cir.
1994) (en banc) (exercising discretion to reach waived
retroactivity issue).

The Supreme Court held in <u>Teague</u> that a federal court may
not create new constitutional rules of criminal procedure on
habeas review.  <u>See</u> 489 U.S. at 301; <u>see also</u> <u>Vega v. Johnson</u>,
149 F.3d 354, 357 (5th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 899
(1999); <u>Davis v. Scott</u>, 51 F.3d 457, 467 (5th Cir. 1995).  "In
determining whether a state prisoner is entitled to habeas
relief, a federal court should apply <u>Teague</u> by proceeding in
three steps."  <u>Caspari</u>, 510 U.S. at 390.  First, we must
determine when Fisher's conviction and sentence became final for
<u>Teague</u> purposes.  <u>See</u> <u>id.</u>  Second, we must "survey the legal
landscape as it then existed and determine whether a state court
considering the defendant's claim at the time his conviction
became final would have felt compelled by existing precedent to
conclude that the rule he seeks was required by the
Constitution."  <u>Id.</u> (internal quotation marks omitted) (brackets
omitted) (citation omitted).  Third, if we determine that Fisher
seeks the benefit of a new rule, we must consider whether "that

23

rule falls within one of the two narrow exceptions to the nonretroactivity principle."  Id.

Fisher did not petition the Supreme Court for a writ of certiorari on direct appeal.  His conviction and sentence therefore became final in 1996, after the time for filing such a petition had elapsed.  See id.; Muniz v. Johnson, 132 F.3d 214, 225 (5th Cir.), cert. denied, 118 S. Ct. 1793 (1998).

We now proceed to the heart of the Teague analysis and determine whether holding that religion-based peremptory challenges violate the Equal Protection Clause would be a new rule.  Unless the rule was "'dictated by precedent'" in 1996, we must conclude that it is new under Teague.  Vega, 149 F.3d at 357 (quoting Teague, 489 U.S. at 301) (emphasis in Teague).  "[U]nless reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor, we are barred from doing so now."  Graham, 506 U.S. at 467 (quoting Saffle v. Parks, 494 U.S. 484, 488 (1990)).

We have no trouble concluding that reasonable jurists, considering the question in 1996, would not have felt compelled by existing precedent to rule that religion-based peremptory challenges violate the Equal Protection Clause.  Although in 1994, it was clear that the Equal Protection Clause prohibits the use of peremptory challenges on the basis of race, see Batson, 476 U.S. at 92-95, and gender, see J.E.B. v. Alabama ex rel.

24

T.B., 511 U.S. 127, 130-31 (1994), no precedent existing in 1996, or even now, clearly dictates an extension of the Batson principle to religion.  See United States v. Stafford, 136 F.3d 1109, 1114 (7th Cir.) ("Allison also argues that Batson should be extended to religion.  This is a matter on which there is a division of judicial opinion."), modified on other grounds, 136 F.3d 1115 (7th Cir.), cert. denied, 119 S. Ct. 123 (1998); United States v. Greer, 939 F.2d 1076, 1086 n.9 (5th Cir. 1991) (stating that "a defendant's exercise of peremptory challenges against [Jewish jurors] is subject to Batson's strictures"), vacated in relevant part and aff'd by an equally divided court, 968 F.2d 433, 437 n.7, 445 (5th Cir. 1992) (en banc) (stating that "we do not reach the issue of the applicability of Batson and Edmonson" to religion) (Smith, J.), ("[W]e note that information as to whether members of the venire were Jewish was essential for the defendants to make reasonably intelligent use of their peremptory challenges.") (Higginbotham, J.); United States v. Williams, 44 M.J. 482, 485 (C.A.A.F. 1996) (noting that "[t]he Supreme Court has not extended Batson to challenges based on religion"); State v. Davis, 504 N.W.2d 767, 768 (Minn. 1993) (holding that Batson protection does not extend to peremptory strikes based on religious affiliation), cert. denied, 511 U.S. 1115 (1994). Extending Batson to religion-based peremptory challenges would therefore be a new rule of constitutional criminal procedure under Teague.

Under the third step in the <u>Teague</u> analysis, we must determine whether either of the two narrow exceptions to the <u>Teague</u> bar applies. <u>Teague</u> provides that a new constitutional rule can apply retroactively on federal collateral review only if the new rule (1) puts "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) is a rule of procedure that is "implicit in the concept of ordered liberty." 489 U.S. at 307 (internal quotation marks omitted); <u>see</u> <u>Muniz</u>, 132 F.3d at 225. This second exception is "reserved for watershed rules of criminal procedure" that implicate the fundamental fairness and accuracy of the proceeding. <u>Teague</u>, 489 U.S. at 311; <u>see</u> <u>Muniz</u>, 132 F.3d at 225.

Neither exception applies to this case. Application of <u>Batson</u> to religion would not protect any primary conduct, nor would it implicate the fundamental fairness and accuracy of the criminal proceeding. The <u>Teague</u> Court found that neither exception applied to a similar constitutional issue of criminal procedure, i.e., whether the Sixth Amendment fair cross section requirement applied to the petit jury. <u>See</u> 489 U.S. at 311-16. Furthermore, the Supreme Court declined to apply <u>Batson</u> retroactively to proceedings on collateral review in <u>Allen v. Hardy</u>, 478 U.S. 255 (1986). <u>See</u> <u>id.</u> at 259-61 (explaining that the rule announced in <u>Batson</u> did not have "such a fundamental impact on the integrity of factfinding as to compel retroactive

26

application").  In addition, courts have applied the <u>Teague</u> bar to subsequent extensions of <u>Batson</u>, rejecting petitioners' claims that the exceptions apply.  <u>See, e.g.</u>, <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1351-52 (10th Cir. 1997) (determining that application of <u>Powers v. Ohio</u>, 499 U.S. 400, 406 (1991), which held that <u>Batson</u> claims did not require racial identity between the defendant and challenged venire member, was a new rule under <u>Teague</u> and that neither exception applied), <u>cert. denied</u>, 119 S. Ct. 128 (1998); <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) (same).

We therefore conclude that, even were we to find that peremptory strikes based on a venire member's religion violate the Equal Protection Clause, Fisher's claim is barred by <u>Teague</u>. The district court thus was justified in denying collateral relief, and we need not address the merits of Fisher's contention.  <u>See</u> <u>Teague</u>, 489 U.S. at 316 (declining to address merits of claim after determining that rule petitioner advocated would not be given retroactive effect).

III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.