**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 02-40985**

**RICKEY LYNN LEWIS,**

**Petitioner-Appellant,**

**versus**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

**Appeal from the United States District Court**
**for the Eastern District of Texas**
**(5:01-CV-105)**

January 22, 2003

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Federal habeas relief was denied Texas state prisoner Rickey Lynn Lewis concerning a capital murder conviction for which the death sentence was imposed. The district court certified one of numerous requested issues for appeal (COA): whether Lewis was excused, on grounds of futility, from exhausting state remedies on his *ex post facto* claim. (The Texas Court of Criminal Appeals had ruled on a similar issue eight years before Lewis' direct appeal.)

---

*Pursuant to 5th Cir. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

In addition, Lewis seeks a COA from this court for each of the following six claims: (1) the trial court violated his Sixth Amendment Confrontation Clause right by not allowing cross-examination of the murder victim's fiancé concerning her remarriage; (2) & (3) Texas Code of Criminal Procedure, Art. 37.071, § 3(e) unconstitutionally shifts the burden of proof for mitigating evidence, as well as permits "open-ended discretion" to the jury, violative of **Furman v. Georgia**, 408 U.S. 238 (1972); (4) & (5) counsel was ineffective for failing both to make a Fourteenth Amendment Equal Protection objection (where psychological testimony supporting future dangerousness was based, in part, on Lewis' gender) and to present mitigating evidence of Lewis' past head injury from a gunshot wound; and (6) the trial court erred by failing to include an "anti-parties" instruction in its charge to the jury on punishment.

Each COA request is **DENIED**; the denial of habeas relief is **AFFIRMED**.

I.

The following facts are based on those stated in **Lewis v. Texas**, No. 71,887, at 3-6 (Tex. Crim. App. 23 June 1999) (unpublished). In the early morning of 17 September 1990, after walking into the bathroom, Connie Hilton noticed an armed man walk past the doorway; immediately screamed to her sleeping fiancé (the victim); and heard a gunshot.

2

After Hilton attempted to hide in the bathroom, a man aimed a gun at her, saying, "Shut up bitch, or I'll shoot you, too". Hilton began struggling with that man; was struck in the head at least twice; finally submitted; and was lifted by two individuals, who told her to cover her eyes.

Hilton was led outside and later directed into the living room, where she was sexually assaulted by the man who found her in the bathroom. That man took Hilton into the kitchen, where he tied her hands and feet; she heard sounds indicating the house was being ransacked. Finally, Hilton felt a gun barrel placed between her legs, and the same man told her: "Quit whimpering, bitch. Somebody will find you in the morning".

Hilton testified that, because of the voice, she knew it was the man who remained with her from when she was discovered in the bathroom until when she was left in the kitchen.

During a search of the room where the sexual assault occurred, investigators collected pubic hairs that were consistent with samples taken from Lewis. Through DNA analysis, samples of Lewis' blood were matched with traces of blood found both in the house and in the victim's car (recovered the next morning) and also with semen recovered from the house and Hilton.

In 1994, a jury convicted Lewis of capital murder of Hilton's fiancé in the course of committing, or attempting to commit, the aggravated sexual assault of Hilton. The jury imposed the death penalty.

In 1996, the Texas Court of Criminal Appeals remanded for a new punishment hearing, pursuant to Texas Code of Criminal Procedure, Art. 44.29(c) (if death sentence set aside for error only in punishment phase, court shall not set aside conviction but commence new punishment hearing). (That provision became effective 1 September 1991, approximately one year after the murder.) *Lewis v. Texas*, No. 71,887 (Tex. Crim. App. 19 June 1996) (unpublished).

In 1997, on remand, Lewis was again sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence. *Lewis v. Texas*, No. 71,887 (Tex. Crim. App. 23 June 1999) (unpublished). Lewis did not seek review by the United States Supreme Court.

In January 1999, Lewis sought habeas relief in the Texas trial court. Pursuant to its findings and conclusions, the court recommended relief be denied. *Ex Parte Lewis*, No. 1-91-32-A (241st Dist., Smith County, Tex. 28 Feb. 2000) (unpublished). The Court of Criminal Appeals adopted the findings and conclusions. *Ex Parte Lewis*, No. 44,725-01 (Tex. Crim. App. 19 April 2000).

Lewis sought federal habeas relief in April 2001. In a summary judgment proceeding, the magistrate judge's recommendations were adopted by the district court and habeas relief was denied (June 2002).

The district court granted a COA on whether Lewis was excused from exhausting state remedies for his *ex post facto* claim.  A COA was denied on all other requested issues.

## II.

As discussed below, it was *not* futile for Lewis, in state court, to raise the *ex post facto* claim; therefore, he is not excused from exhausting state remedies.  A COA is refused on all other issues presented, because Lewis has not shown reasonable jurists would find the district court's rulings debatable or wrong.

A summary judgment in a habeas proceeding is reviewed *de novo*. *Woods v. Cockrell*, 307 F.3d 353, 356-57 (5th Cir. 2002).  Review is through the heightened standards of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  All state findings of fact are considered correct, absent clear and convincing evidence otherwise. *Id*. at 357; 28 U.S.C. 2254(e)(1).

To appeal the denial of habeas relief, Lewis must first obtain a COA; he must make "a substantial showing of the denial of a constitutional right".  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) [and obtain a COA] is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

5

In general, if an issue is certified for appeal, relief is not granted unless the state court proceeding resulted in: (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States", 28 U.S.C. 2254(d)(1); or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding", 28 U.S.C. 2254(d)(2). In determining what constitutes an "unreasonable application" of law under § 2254(d)(1), "'unreasonable' does not mean merely 'incorrect': an application of clearly established Supreme Court precedent must be incorrect *and* unreasonable to warrant federal habeas relief". **Foster v. Johnson**, 293 F.3d 766, 776 (5th Cir.)(emphasis in original) (citing **Williams v. Taylor**, 529 U.S. 362, 410-12 (2000)), *cert. denied sub nom.* **Foster v. Epps**, 123 S. Ct. 625 (2002).

A.

The issue certified for appeal is the district court's exhaustion-bar for Lewis' *ex post facto* claim. That ruling is reviewed *de novo*. **Fisher v. Texas**, 169 F.3d 295, 299 (5th Cir. 1999). Needless to say, because the *ex post facto* claim was *not* raised in state court, there is no state court ruling to which the above-discussed AEDPA "unreasonable" standard can be applied. Hence, the exhaustion-bar ruling is reviewed *de novo*.

6

Lewis claims the Court of Criminal Appeals violated the *Ex Post Facto* Clause, U.S. CONST. art. I, § 10, cl.1, when it applied Texas Code of Criminal Procedure, Art. 44.29(c) to remand his case for a new hearing on punishment only.  Article 44.29(c) provides:

> If any court sets aside or invalidates the sentence of a defendant convicted of an offense under Section 19.03, Penal Code, and sentenced to death on the basis of any error affecting punishment only, the court shall not set the conviction aside but rather shall commence a new punishment.

As noted, this provision took effect in September 1991.

Prior to that effective date, a capital case in which reversible error occurred only in the sentencing phase would have been remanded for a new trial on both guilt-innocence and punishment.  Lewis asserts that, because the murder at issue occurred before the 1991 effective date, application of the new Article 44.29(c) violates the *Ex Post Facto* Clause.

The district court ruled Lewis did not exhaust his state law remedies by first presenting this issue to the Texas courts.  The district court held Lewis was, therefore, procedurally barred from raising it in federal court.

Lewis contends the exhaustion requirement is excused as futile.  He states that, in **Grimes v. State**, 807 S.W.2d 582 (Tex. Crim. App. 1991) (en banc), the Court of Criminal Appeals had already decided the *ex post facto* issue adversely to his position urged here.  The State counters that, although it is unclear the

7

futility exception exists post-AEDPA, the exception would not apply here because Lewis must still raise the issue in state court, even if it would not be sympathetic.

Federal habeas relief will not be granted unless: "the applicant has exhausted the remedies available in the courts of the State", 28 U.S.C. § 2254(b)(1)(A); "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of applicant", 28 U.S.C. § 2254(b)(1)(B). The principles of finality, comity, and federalism require a federal habeas petitioner to first provide the state court a full and fair opportunity to consider federal law challenges. *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

Our court has questioned whether the futility exception, which existed pre-AEDPA, exists post-enactment. Nonetheless, courts have recognized AEDPA's statutory language implies the exception is viable and have continued to apply it. *Jones v. Jones*, 163 F.3d 285, 298 (5th Cir. 1998) ("Our court has not addressed whether the futility exception ... survived AEDPA's enactment. But, ... the language of § 2254(b)(1)(B) is substantially identical to the language of pre-AEDPA § 2254(b), upon which the ... exception

appears to be based."), *cert. denied*, 528 U.S. 895 (1999). *See Fisher*, 169 F.3d at 303 (applying exception). For purposes of deciding this appeal, we need not address this question. We will assume it exists.

The exception is quite limited, applying only "when ... the highest state court has *recently* decided the *same* legal question adversely to the petitioner". *Id*. (emphasis added). But, "the likelihood of failure of a claim in state court is *no* excuse for *not* presenting it there". *Beazley v. Johnson*, 242 F.3d 248, 269 (5th Cir.) (emphasis in original) (citing *Engle v. Isaac*, 456 U.S. 107, 130 (1982) ("If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may *not* bypass the state courts simply because he thinks they will be unsympathetic to the claim. *Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid*." (second emphasis added))), *cert. denied sub nom. Beazley v. Cockrell*, 122 S. Ct. 329 (2001).

Therefore, to excuse exhaustion, Lewis must show far more than a likelihood of failure. He must show: the state court had a full and fair opportunity to decide the *same* issue in a *recent* case; and interests of comity and federalism are served by excusing the failure to exhaust. Lewis claims *Fisher* and *Youngblood v. Lynaugh*, 882 F.2d 956 (5th Cir. 1989), *rev'd on other grounds sub nom.,*

*Collins v. Youngblood*, 497 U.S. 37 (1990), support his prevailing under the futility exception here.

*Youngblood* involved a habeas request on a claimed *ex post facto* violation concerning Texas Code of Criminal Procedure, Art. 37.10(b) (requiring reformation of jury verdict where jury assesses both a punishment authorized by law and a punishment not authorized by law). Youngblood did not directly present the issue in state court. In federal court, he claimed the futility exception. Our court allowed the exception, because, only one week prior to considering Youngblood's case, the Court of Criminal Appeals had decided the same issue in *Ex Parte Johnson*, 697 S.W. 2d 605 (Tex. Crim. App. 1985) (en banc). Further, in affirming Youngblood's conviction, the Court of Criminal Appeals explicitly relied on *Ex Parte Johnson* when it applied Article 37.10(b).

*Fisher* involved the futility exception for failure, in state court, to raise a *Batson* claim that religious-based preemptory strikes violated the Equal Protection Clause. *See* *Batson v. Kentucky*, 476 U.S. 79 (1986) (Equal Protection Clause forbids prosecutors from challenging potential jurors on basis of race). Our court held interests of comity and federalism were best served by excusing exhaustion, based on the following reasons. First, the Court of Criminal Appeals decided, en banc, the exact issue in a separate case one year before Fisher's appeal to that court. Second, although Fisher had not raised the issue, the state court

10

addressed it (in a footnote), dismissing it as meritless.  Third, the State failed to raise exhaustion in district court.  Finally, "because ... Fisher's claim [was] barred by **Teague**, judicial efficiency [made] it appropriate to dispose of [his] claim without requiring additional litigation".  **Fisher**, 169 F.3d at 303.

In **Youngblood** and **Fisher**, the adverse precedent occurred only one week and one year, respectively, before the appeal involving the same issue.  On the other hand, **Grimes**, on which Lewis relies, was decided eight years before Lewis' state appeal (1999).  In the light of this eight-year interval, the earlier quoted admonition in **Engle** is particularly appropriate:  "Even a state court that has previously rejected a constitutional argument may decide, *upon reflection*, that the contention is valid".  456 U.S. at 130 (emphasis added).

Moreover, the Court of Criminal Appeals has *not* decided the *same* issue Lewis now raises.  In **Youngblood**, that court had decided, in a separate case, that the *same* statute that was applied to Youngblood did not violate the *Ex Post Facto* Clause, which was the *same* issue for which Youngblood sought habeas relief. Likewise, in **Fisher**, that court relied directly on the adverse precedent in denying relief.  Here, however, Lewis relies on **Grimes**, which addressed a *different* statute for a *state ex post facto* claim.

11

Article 44.29(c) is at issue here; *Grimes* concerned *Article 44.29(b)*, applicable to *non-capital* cases. *Grimes* held that article did not violate the *Ex Post Facto* Clause of the *Texas* Constitution (although the Texas court relied on Supreme Court interpretations of the *Ex Post Facto* Clause in the United States Constitution and held Article 44.29(b) violated neither). Lewis contends *Article 44.29(c)*, *applicable only to capital* cases, violates the *Ex Post Facto* Clause of the United States Constitution.

The language of Articles 44.29(b) and 44.29(c) varies in part. Article 44.29(b) provides: "If the court of appeals or the Court of Criminal Appeals awards a new trial to the defendant only on the basis of an error made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial". Article 44.29(c), at issue in this case, provides: "If any court sets aside or invalidates the sentence of a defendant convicted of an offense under Section 19.03, Penal Code, and sentenced to death on the basis of any error affecting punishment only, the court shall not set the conviction aside but rather shall commence a new punishment".

Although the Court of Criminal Appeals may choose to interpret these statutes similarly, it does not follow that it must, or even will, do so.  Consequently, unlike in *Youngblood* or *Fisher*, Lewis has not shown, for the issue he failed to raise in state court, that the state court either *recently* decided it or decided the *same* one.

Finally, other considerations do not show federalism and comity would be served by excusing exhaustion.  *Fisher* involved a failure of the State to raise exhaustion at the district court.  Here, the State did not fail to do so; in fact, the district court barred Lewis' claim *because of* the failure to exhaust.

Moreover, in *Fisher*, the claim was *Teague*-barred; it was judicially inefficient to send the issue back to state court only to hear a successive federal habeas petition after exhaustion and bar the claims then.  Here, the Texas Abuse of Writ Doctrine, Texas Code of Criminal Procedure, Art. 11.071, § 5, likely bars Lewis from again filing for state habeas relief.  (Texas Code of Criminal Procedure, Article 11.071, § 5 allows a subsequent habeas application only if:  (1) it could not have been raised in the previous application because the factual or legal basis was unavailable at the time; or (2) but for a violation of the United States Constitution, no rational juror would have found Lewis guilty or would have answered the punishment issues in the State's favor.  The district court found:  the legal claim was available at

13

the time of Lewis' original application; and he has presented no facts supporting that, even if there were an *ex post facto* violation, no rational juror would have found him guilty and sentenced him to death.)

Because Lewis has not shown that a state court has decided the *same* issue in a *recent* case and that federalism and comity would be served by excusing exhaustion, the futility exception (*if* it even exists post-AEDPA enactment) does not permit the failure to exhaust. Lewis' *ex post facto* claim is barred.

## B.

Lewis seeks a COA for six other issues. As discussed, an issue will be certified for appeal only if Lewis can make "a substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c). Restated, reasonable jurists would find debatable or wrong the district court's resolution of petitioner's constitutional claim. *Slack*, 529 U.S. at 484.

Moreover, a COA request is viewed against the backdrop, under AEDPA, for obtaining habeas relief. In that regard, and as discussed *supra*, if a COA is granted on a merits issue, a state court decision on that issue is reviewed only to determine if it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(1) & (2).

14

Of the earlier-listed six issues for which he seeks a COA, Lewis did not brief four. Accordingly, those four are considered abandoned. *E.g., **Lookingbill v. Cockrell***, 293 F.3d 256, 263 (5th Cir. 2002).

Both of the remaining COA requests concern the punishment phase: (1) whether Texas Code of Criminal Procedure, Art. 37.071, § 3(e) unconstitutionally shifts to defendant the burden of proof on mitigation; and (2) whether the trial court violated Lewis' Sixth Amendment Confrontation Clause right by refusing his request to cross-examine the victim's fiancé concerning her remarriage.

1.

For the three special issues in the punishment phase, the third, conforming to Texas Code of Criminal Procedure, 37.0711, § 3(e), stated:

> Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal, moral culpability of the Defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

The jury was further instructed: "The burden of proof with respect to Special Issues 1 and 2, in this phase of the trial, rests upon the State, and it never shifts to the Defendant"; and "[w]ith respect to *any and all issues in this trial*, the law does not require the defendant to produce evidence at all and the defendant

15

*has no burden of proof as to any issue* in the trial of this case".
(Emphasis added.)

Lewis contends Article 37.0711, § 3(e) is unconstitutional because it does not require the State to prove, beyond a reasonable doubt, the *absence* of mitigating circumstances. On direct appeal, the Court of Criminal Appeals rejected this contention, noting Texas courts have already decided this issue. *E.g.,* **Barnes v. State**, 876 S.W.2d 316, 330 (Tex. Crim. App.) ("Neither this court nor the Texas legislature has ever assigned a burden of proof on the issue of mitigating evidence. The Eighth and Fourteenth Amendments do not require that a burden be placed on the State." (internal citation omitted)), *cert. denied*, 513 U.S. 861 (1994).

Lewis now relies on the quite recent decision in **Ring v. Arizona**, __ U.S. __, 122 S. Ct. 2428 (2002), which overruled, in part, **Walton v. Arizona**, 497 U.S. 639 (1990). **Ring** held a jury must determine any aggravating factors which enhance a sentence, including those in capital cases. Lewis implies **Ring** also overruled **Walton**'s holding that shifting to defendant the burden for mitigation is constitutional.

**Apprendi v. New Jersey**, 530 U.S. 466 (2000), established that the State's characterization of a circumstance as an element of the crime or as a sentencing factor does not determine whether a judge or jury decides the issue. It follows, according to Lewis, that

16

the State must prove beyond a reasonable doubt the absence of sufficient mitigating circumstances.

The State responds: *Ring* overruled *Walton* only to the extent *Walton* allowed a judge, not a jury, to consider *aggravating* factors; *Walton*'s holding that a State may shift the burden of proof to defendant on mitigation is still good law; and, in any event, the jury was properly instructed that the State had the burden to prove all issues.

The district court noted *Walton* rejected Lewis' burden shifting argument. As discussed below, *Walton* is not overruled on the issue at hand; as a result, Lewis has not made a substantial showing that the mitigating evidence special issue denied him his constitutional rights.

*Walton* considered the constitutionality of Arizona's capital sentencing scheme, which allowed a judge to consider aggravating and mitigating factors. If one aggravating factor were present, and the mitigating factors were not sufficient, defendant was sentenced to death. Walton contended, *inter alia*: every finding of fact for sentencing must be determined by a jury; and the statute violated the Eighth and Fourteenth Amendments by requiring defendant to prove mitigating factors.

The Supreme Court held: the Constitution did not require a jury to determine the sentencing factors, 497 U.S. at 647; and

17

shifting the burden to defendant on mitigation did not violate the

Constitution:

> So long as a State's method of allocating the
> burdens of proof does not lessen the State's
> burden to prove every element of the offense
> charged, or in this case to prove the
> existence of aggravating circumstances, a
> defendant's constitutional rights are not
> violated by placing on him the burden of
> proving mitigating circumstances sufficiently
> substantial to call for leniency. ... *We
> therefore decline to adopt as a constitutional
> imperative a rule that would require the court
> to consider the mitigating circumstances
> claimed by defendant unless the State negated
> them by a preponderance of the evidence.*

*Id*. at 650 (emphasis added).

   *Apprendi* established a new constitutional rule:  "Other than

the fact of a prior conviction, any fact that increases the penalty

for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt".

*Apprendi*, 530 U.S. at 490.  *Apprendi*, however, recognized the

distinction between aggravating and mitigating factors:

> Finally, the principal dissent ignores the
> distinction the Court has often recognized
> between facts in aggravation of punishment and
> facts in mitigation.  If facts found by a jury
> support a guilty verdict of murder, the judge
> is authorized by that jury verdict to sentence
> the defendant to the maximum sentence provided
> by the murder statute. If the defendant can
> escape the statutory maximum by showing, for
> example, that he is a war veteran, then a
> judge that finds the fact of veteran status is
> neither exposing the defendant to a
> deprivation of liberty greater than that
> authorized by the verdict according to
> statute, nor is the judge imposing upon the

18

> defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.

*Id*. at 490-91 n.16 (internal citation omitted).

Post-***Apprendi***, ***Ring*** revisited the constitutionality of Arizona's capital sentencing scheme; it only overruled ***Walton*** on the issue of whether a judge may find aggravating factors:

> [W]e overrule ***Walton*** *to the extent* that it allows a *sentencing judge*, sitting without a jury, to find an *aggravating circumstance* necessary for imposition of the death penalty. Because Arizona's enumerated *aggravating factors operated as the functional equivalent of an element of a greater offense*, the Sixth Amendment requires that they be found by *the jury*.

***Ring***, 122 S. Ct. at 2443 (internal quotations and citation omitted; emphasis added). Indeed, the Court noted the limited issue on appeal: "Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him.... *He makes no Sixth Amendment claim with respect to mitigating circumstances*". *Id*. at 2437 n.4 (emphasis added). *See also* ***United States v. Bernard***, 299 F.3d 467, 484 n.14 (recognizing limited nature of ***Ring***'s holding).

## 2.

The trial court refused, during the punishment phase, to allow Lewis' counsel to cross-examine Hilton, the murder victim's fiancé, concerning her remarriage six months after the murder. Claiming

violation of the Confrontation Clause, Lewis asserts: cross-examination on this issue would have ameliorated Hilton's victim-impact testimony; without the cross-examination, Hilton's testimony presented an inaccurate portrayal of the effects the murder had on her. The State counters: such cross-examination was irrelevant to Hilton's victim-impact testimony; Lewis had the opportunity to cross-examine Hilton on other credibility issues concerning the testimony and did not; and even if cross-examination should have been allowed, the error was harmless because of the overwhelming evidence against Lewis.

Hilton's victim-impact testimony was:

> [The victim] was my fiancé, so he was basically my whole future or a big part of it, and he was my best friend. And he and I had lived there for over a year, had made a lot of plans. The family was close. He just – it changed my entire life
>
> ...
>
> I have physical and emotional [scars]. Physical that I have to look at every day; emotional that bother me when it gets dark. I don't like the dark anymore. It bothers me.

When Lewis' counsel cross-examined Hilton, he did not address this testimony.

Later, Lewis requested cross-examination on the issue of Hilton's remarriage, contending the remarriage is probative of showing Hilton was not alone and her fear of the dark was diminished. The trial court ruled the remarriage irrelevant to the effect the murder had on Hilton.

20

The Court of Criminal Appeals upheld that ruling. It noted that Lewis failed to show why revealing the remarriage was necessary and concluded the trial court did not abuse its broad discretion in limiting cross-examination.

The district court denied this claim, holding the Court of Criminal Appeals did not rule contrary to, or unreasonably apply, federal law when it held no abuse of discretion in limiting marginally relevant cross-examination. As discussed below, a COA is denied because no reasonable jurist would find debatable or wrong the district court's determination.

The Confrontation Clause guarantees a defendant the right "to be confronted with the witnesses against him". U.S. CONST. amend. VI. The main purpose is to secure the opportunity to cross-examine. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1976).

The Supreme Court, however, has observed: "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

> [T]he Confrontation Clause ... [does not] prevent[] a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose *reasonable limits* on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the

21

> witness' safety, or interrogation that is repetitive or *only marginally relevant*.

***Delaware v. Van Arsdall***, 475 U.S. 673, 679 (1986) (emphasis added).

As stated, Lewis has not made a substantial showing he was denied his Confrontation Clause right. Hilton's remarriage was, at most, marginally relevant to her victim-impact testimony, including her fear of the dark and suffering because of her physical scars. Further, the remarriage was only tangentially related to discrediting her testimony that the victim was a big part of her future and his death changed her entire life. Finally, Lewis had the opportunity to cross-examine Hilton on other credibility issues concerning her victim-impact testimony; he did not do so.

### III.

For the foregoing reasons the COA requests are **DENIED**; the denial of habeas relief is **AFFIRMED**.

*COA DENIED; AFFIRMED*

22