IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-20624

RONALD NELSON DANIEL,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

February 25, 2002

Before GARWOOD, JOLLY, and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Ronald Nelson Daniel appeals the district

court's denial of *habeas corpus* relief as to his Texas conviction for

the aggravated sexual assault of a child. Daniel contends that: (1) his

guilty plea was not voluntary because his lawyer assured him he would

be sentenced by a different judge; and (2) such assurance constituted

ineffective assistance of counsel. We affirm the district court's

denial of relief.

## Facts and Proceedings Below

Ronald Daniel molested his niece for two years beginning when she was six years old. Daniel forced her to wear a blindfold while he: (1) fondled her; (2) digitally penetrated her vagina; (3) rubbed his crotch against hers; and (4) forced her to straddle him. Daniel never had vaginal intercourse with her.

On March 4, 1994, Daniel was indicted for the aggravated sexual assault of a child. His case was assigned to the 338th District Court of Harris County, in which Judge Mary Bacon presided. Daniel had a desire to plead guilty because it would spare his niece the anguish of testifying to his acts of molestation. Daniel's counsel, James Leitner, informed him of Judge Bacon's reputation for imposing very harsh sentences for sexual offenders, especially where the victim was a child. Leitner advised Daniel against pleading guilty to Judge Bacon without an agreed sentence recommendation from the State, and recommended to Daniel that he plead guilty to a jury.[1] The case was set for trial on August 1, 1994. On that day, visiting Judge William Hatten was presiding instead of Judge Bacon. The prosecutor, Jay Hileman, told Leitner that the case could be reset to a date on which Judge Bacon would preside or that Judge Hatten could handle the case. Leitner consulted with Judge Brian Rains, who had served as chief prosecutor in

---

[1]In Texas, if the punishment for an offense is not absolutely fixed by law, the defendant may plead guilty and have the jury assess punishment. *See* TEX. CRIM. PROC. CODE ANN. § 26.14.

Judge Hatten's court. After hearing the facts of Daniel's case, Judge Rains expressed the view that Judge Hatten would be "very fair" in sentencing Daniel. As a result, Leitner advised Daniel to plead guilty to Judge Hatten. When Daniel questioned whether Judge Hatten would sentence him, Leitner assured him that he would. It is undisputed that the time-honored custom of the Harris County criminal courthouse is that if a defendant pleads guilty to a visiting judge he will also be sentenced by that visiting judge. On August 1, 1994, Daniel pleaded guilty before Judge Hatten to the aggravated sexual assault of a child in violation of TEX. PENAL CODE ANN. § 22.021(a)(1)(B).

Daniel's sentencing hearing was held on September 16 and 19, 1994. Judge Bacon presided. Because Leitner did not want to anger Judge Bacon (and thereby harm his client) by questioning her authority, he did not object to Judge Bacon's participation.[2] Leitner presented evidence of Daniel's progress in receiving treatment for his pedophilia. Leitner called Daniel as a witness and the following relevant exchanges took place:

> "Q   You understand when you entered your plea that the Court had a range of punishment anywhere from deferred adjudication to life in the penitentiary?
> A   Yes.
> ....

---

[2]Judge Hatten would have had jurisdiction to sentence Daniel. *See Johnson v. Bussey*, 95 S.W.2d 990, 992 (Tex. Civ. App. 1936) (observing that the return of the regular judge does not oust the special judge of jurisdiction to "make orderly disposition of the matters which have been undertaken by him."). However, it was not improper for Judge Bacon to sentence Daniel. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).

Q      You understand that no matter what happens to you in this case it's not the Judge's fault. It's not anybody's involved fault. It's simply you.
A      Yes, I do."

Judge Bacon sentenced Daniel to the maximum penalty provided for by Texas law—life in prison and a $10,000 fine. Judge Bacon offered Daniel an opportunity to speak after sentencing, but Daniel declined.

On October 19, 1994, Daniel moved for a new trial on the grounds that: (1) Leitner's assurance that Judge Hatten would be the sentencing judge rendered his guilty plea involuntary under the United States and Texas Constitutions; (2) Leitner's failure to object to sentencing by Judge Bacon constituted ineffective assistance of counsel under the Texas Constitution; (3) Leitner's assurance constituted ineffective assistance of counsel under the Texas Constitution; and (4) Daniel's life sentence constituted cruel or unusual punishment and was foreign to due course of law under the Texas Constitution. On November 30, 1994, Judge Bacon denied the motion.

Daniel continued to advance these four issues on direct appeal. On March 13, 1997, the conviction was affirmed on direct appeal by the Court of Appeals for the Fourteenth District of Texas. *Daniel v. State of Texas*, 1997 WL 109988 (Tex. App.-Hous. (14 Dist.)). On August 13, 1997, the Texas Court of Criminal Appeals denied Daniel's petition for discretionary review. Daniel did not seek review in the United States Supreme Court.

On August 6, 1998, Daniel filed a petition for post-conviction relief in state court, arguing only that his plea was involuntary under

4

*Brady v. United States*, 90 S.Ct. 1463 (1970). On October 28, 1998, the trial court, Judge William Hatten presiding, recommended denial of the petition on the merits, adopting the State's proposed findings of fact and order. On March 31, 1999, the Texas Court of Criminal Appeals denied relief on the basis of the trial court's findings. Daniel did not seek review in the United States Supreme Court.

On June 30, 1999, Daniel filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 19, 2000, the district court granted the State's motion for summary judgment and dismissed the petition. The district court granted a certificate of appealability as to three issues, namely whether: (1) Daniel's guilty plea was involuntary because of Leitner's assurance that Judge Hatten would impose sentence; (2) Leitner's assurance constituted ineffective assistance of counsel; and (3) the district court correctly concluded that the *Teague* doctrine precluded relief.[3] Daniel also argued in the district court that counsel was ineffective for failing to object to Judge Bacon's participation at sentencing, but the district court did not grant a certificate of appealability on that issue, and it is therefore not before us. On July 13, 2000, Daniel filed notice of appeal to this Court.

I.   Standard of Review

---

[3]The district court only engaged in a *Teague v. Lane*, 109 S.Ct. 1060 (1989), analysis for Daniel's *Brady* claim and concluded that *Teague's* non-retroactivity rule prevented it from granting the petition. The district court did not apply *Teague* to Daniel's ineffective assistance claim.

Daniel presented his federal *Brady* claim to the State on direct appeal and in his state habeas petition. The State rejected this claim without relying on a procedural bar. There appears no basis on which the State could have disposed of this claim on procedural grounds. Daniel's *Brady* claim was, therefore, adjudicated on the merits in state court and is entitled to review under the deferential standard of 28 U.S.C. § 2254(d).[4]

In contrast, Daniel's ineffective assistance of counsel claims relied exclusively on state law and alleged violation only of the Texas Constitution. All three times Daniel argued his ineffective assistance of counsel claims before the state courts he specifically stated that the applicable standard was *not* that set forth in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). At that time, Texas did not require a showing of prejudice to establish ineffective assistance of counsel in the noncapital sentencing context. *See Hernandez v. State*, 988 S.W.2d 770, 72 (Tex. Crim. App. 1999) (overruling *Ex Parte Cruz*, 739

---

[4]*See Green v. Johnson*, 116 F.3d 1115, 1120-21 (5th Cir. 1997). 28 U.S.C. § 2254(d) provides:
"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

6

S.W.2d 53 (Tex. Crim. App. 1987), which had held *Strickland* inapplicable). Because Daniel did not argue that his rights under the Sixth Amendment had been violated, specifically disclaimed reliance on the federal ineffective assistance of counsel standard and proceeded solely under a materially different theory of establishing ineffective assistance of counsel, Daniel's federal ineffective assistance of counsel claim was not adjudicated on the merits in state court. Likewise, because the "substantial equivalent" of the *Strickland* claim Daniel now advances was not "fairly presented" in *any* state court, Daniel has clearly not exhausted this claim. *See Whitehead v. Johnson*, 157 F.3d 384, 87 (5th Cir. 1998). The State has not argued Daniel's failure to exhaust this claim as a ground for dismissal of his petition. Nevertheless, 28 U.S.C. § 2254(b)(1)(A)[5] prevents this Court from granting Daniel's petition unless the State, through counsel, has expressly waived the exhaustion requirement. The State has not expressly waived the exhaustion requirement. 28 U.S.C. § 2254(b)(2)[6] empowers this Court to *deny* Daniel's application notwithstanding his failure to exhaust his federal claims in state court.

---

[5]28 U.S.C. § 2254(b)(1) provides, in relevant part:
"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
(A) the applicant has exhausted the remedies available in the courts of the State;".

[6]28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

The deferential standard of section 2254(d) applies to Daniel's *Brady* claim but not to his ineffective assistance of counsel claim. Review of the latter is governed by the principles of *Teague v. Lane*, 109 S.Ct. 1060 (1989). *See Fisher v. Texas*, 169 F.3d 295, 304 (5th Cir. 1999) ("*Teague* still applies to a petitioner's claim that has not been adjudicated on the merits by a state court and that is not procedurally barred."). If, applying the AEDPA (28 U.S.C. § 2254(d)) to Daniel's *Brady* claim and *Teague* to his ineffective assistance of counsel claim, we are not able to deny *all* relief, then we would ordinarily be required to dismiss Daniel's *entire* petition for failure to comply with the exhaustion requirement.[7]

## II. Voluntariness of Daniel's Plea

Daniel argues that his guilty plea was involuntary because it was induced by Leitner's unfulfilled promise that Judge Hatten would be the sentencing judge. In his affidavit, Daniel states: "Had I known when I waived my rights and entered a plea to Judge Hatten he was not going to assess punishment and that Judge Bacon was going to get involved in

---

[7]*See Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) ("The exhaustion doctrine, generally codified in section 2254(b) & (c), requires that normally a state prisoner's *entire* federal habeas petition must be dismissed unless the prisoner's state remedies have been exhausted as to *all* claims raised in the federal petition." (emphasis in original)).

Of course, this court has discretion to hold that the State's silence has effected a waiver of the exhaustion requirement where failure to so hold would result in "unnecessary delay in granting relief that is plainly warranted." *Granberry v. Greer*, 107 S.Ct. 1671, 1676 (1987).

8

my case at sentencing, I would have pled guilty to a jury." Daniel does *not* claim the existence of a plea agreement concerning the identity of the sentencing judge. Nor does he claim that he had the right to be sentenced by the judge of his choice or argue any other ground for involuntariness. The record reflects that in all other respects Daniel completely understood the consequences of his guilty plea.

Because a guilty plea involves the waiver of constitutional rights it must be voluntary, knowing and intelligent. *Brady v. United States*, 90 S.Ct. 1463, 1468-69 (1970). In *Brady* the Supreme Court stated:

> "The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
>
> > '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'" *Id*. at 1472 (inside quotation marks omitted).[8]

*See also United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997) (quoting a portion of the above *Brady* passage); *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980) (citing and paraphrasing the above *Brady* passage; affirming denial of claim the plea was involuntary).

---

[8]Citing *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc) (quoting panel dissenting opinion), rev'd on confession of error on other grounds, 78 S.Ct. 563 (1958). *Brady* and *Shelton* each uphold denial of claim that the plea was involuntary.

9

Where a defendant can show that the court, the prosecutor or defense counsel induced his guilty plea by clearly and unequivocally *guaranteeing* a lesser sentence or some other specific leniency, the guilty plea is not voluntary unless the defendant receives that which he was promised. *See Amaya*, 111 F.3d at 388-89 (holding that the district court's legally unfulfillable promise to impose sentence as though the government had moved for a downward departure rendered the defendant's guilty plea involuntary); *Davis v. Butler*, 825 F.2d 892, 894-95 (5th Cir. 1987) (remanding for evidentiary hearing to determine if defense counsel guaranteed that if the defendant pleaded guilty he would be pardoned in three years). The defendant must generally establish that an actual promise or guarantee was made by showing: (1) the exact terms of the alleged guarantee; (2) exactly when, where and by whom the guarantee was made; and (3) the identity of any eyewitnesses to the guarantee. *DeVille v. Whitley*, 21 F.3d 654, 58 (5th Cir. 1994). Here, it is undisputed that Leitner told Daniel that if he pleaded guilty to Judge Hatten, he would be sentenced by Judge Hatten.

A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. *See Spinelli v. Collins*, 992 F.2d 559, 561-62 (5th Cir. 1993) (defendant's mistaken belief that he would be eligible for parole after five years did not render his guilty

10

plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel).

Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed. *See Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989) (defense counsel's statement that the defendant would probably receive less than a fifteen year sentence did not render the guilty plea involuntary because a "prediction, prognosis, or statement of probabilities . . . does not constitute an 'actual promise'."); *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary."); *Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985) (defense counsel's statement that parole would be probable after 10 ½ years did not render the guilty plea involuntary because it was a mere prediction, not a guarantee); *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975) ("Petitioner's allegation of a breached bargain is premised on the alleged statement to him by his own attorney that the sentencing judge generally gave sentences of about 20 years in second degree murder cases and that petitioner, as a first offender, might expect such a sentence. However, a good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary.").

The district court found that, although Leitner did assure Daniel

11

that if he pleaded guilty to Judge Hatten he would be sentenced by Judge Hatten, Daniel's case was like those in which counsel predicts that a proposed course of action will *probably* result in a lesser sentence. We agree with the district court that the *substance* of Leitner's statement requires its treatment as a "prediction, prognosis, or statement of probabilities", not a clear and unequivocal guarantee of a lesser sentence. *Harmason*, 888 F.2d at 1532.

First, we think that the only reasonable lay person's understanding of Leitner's assurance that Judge Hatten would impose sentence is as a prediction, not an unqualified guarantee. Indeed, there are many obvious circumstances that any reasonable lay person would recognize as ones resulting in Judge Hatten not presiding at sentencing.[9] Daniel knew there would be a delay of several weeks between entry of his guilty plea and sentencing. In that time, Judge Hatten could have died, become ill or disabled (temporarily or longer term) or retired and moved to Palm Beach County, Florida, or the like.[10]

Second, even if we construe Leitner's statement as guaranteeing that Judge Hatten would be the sentencing judge, its substantively predictive, probabilistic character precludes relief. Leitner did not

---

[9]It is not known why Judge Hatten did not preside at Daniel's sentencing hearing.

[10]We do know he did not die, retire or suffer an illness or a disability which lasted from before sentencing until October 1998 (when he ruled on Daniel's state habeas petition).
There in no evidence that Leitner told Daniel that if for any reason Judge Hatten did not sentence Daniel then nevertheless some judge *other than* Judge Bacon would be the sentencing judge.

12

guarantee any of the substantive benefits that this Court has indicated could form the basis for a *Brady* involuntariness claim, such as: (1) a downward departure at sentencing;[11] (2) a lesser sentence;[12] or (3) parole, commutation or pardon after a certain period of incarceration.[13] Leitner "promised" nothing more than what he *predicted* would be a better roll of the sentencing dice. There was no guarantee that Judge Hatten would have sentenced Daniel less harshly than Judge Bacon. Any value of Leitner's promise was *wholly* dependent on the *probability* that Judge Hatten would impose a less severe sentence than Judge Bacon would. The statement "you will probably be sentenced by Judge Hatten, and he will probably sentence you less harshly than would Judge Bacon" is not in this respect materially different from "you will definitely be sentenced by Judge Hatten, and Judge Hatten will probably sentence you less harshly than would Judge Bacon." In neither case has a light or lighter (or particular) sentence been *promised*.

Leitner's assurance that Judge Hatten would be the sentencing judge simply lacked the requisite certainty as to actual sentencing benefit to render Daniel's plea involuntary under *Brady*. Daniel concedes, as he must, that he has no right to be sentenced by the judge of his choice

---

[11]*See United States v. Amaya*, 111 F.3d 386, 387 (5th Cir. 1997).

[12]*See Harmason*, 888 F.2d at 1530; *DeVille v. Whitley*, 21 F.3d 654, 58 (5th Cir. 1994); *McKenzie v. Wainwright*, 632 F.2d 649, 650 (5th Cir. 1980).

[13]*See Davis v. Butler*, 825 F.2d 892, 94 (5th Cir. 1987); *Smith v. Blackburn*, 785 F.2d 545, 546-47 (5th Cir. 1986).

and that Judge Bacon had jurisdiction to sentence him. Leitner's assurance merely gave rise to the hope of leniency. We are not aware of *any* case vacating a guilty plea because the defendant was promised sentencing by a judge his lawyer *predicted* would be lenient. At the sentencing hearing before Judge Bacon, Daniel testified that he was aware that he could be sentenced to life in prison. Daniel's guilty plea was knowing and voluntary.

This Court has interpreted the AEDPA, 28 U.S.C. § 2254(d), as only allowing the Supreme Court to announce new rules for purposes of federal habeas. *Williams v. Cain*, 229 F.3d 468, 474 (5th Cir. 2000). The State's rejection of Daniel's involuntariness claim was not contrary to or an unreasonable application of that federal law which has been clearly established by the Supreme Court. We affirm the district court's grant of summary judgment for the State as to Daniel's involuntariness claim.

III. Ineffective Assistance of Counsel

Daniel claims that Leitner's assurance that Judge Hatten would impose sentence constituted ineffective assistance of counsel which rendered his plea involuntary. Daniel's ineffective assistance claim is basically a repeat of his voluntariness claim, except that now the emphasis is on Leitner's statement as bad advice, not as a broken promise.

As previously noted, the merits of this federal ineffective assistance of counsel claim were not ruled on by (because specifically

14

withheld from) the state courts, so the claim is not governed by section 2254(d).[14] Review of this claim is hence governed by the principles set forth in *Teague v. Lane*, 109 S.Ct. 1060 (1989). *Teague* held that a federal court may not create or apply new constitutional rules on habeas review. *Fisher v. Texas*, 169 F.3d 295, 305 (5th Cir. 1999). The *Teague* analysis involves three determinations: (1) when the applicant's conviction became final; (2) whether a state court considering the applicant's federal claim when his conviction became final would have felt compelled by existing precedent to apply the rule the applicant now seeks; and (3) if the applicant seeks to apply a new rule, whether that rule falls within one of the narrow exceptions to the non-retroactivity principle. *Id*.

As Daniel did not file a petition for certiorari with the United States Supreme Court, his conviction became final on November 11, 1997, ninety days after the Texas Court of Criminal Appeals denied his petition for discretionary review. We now survey the legal landscape as it then existed to determine if a state court would have felt compelled by then existing federal law to provide the relief Daniel seeks.

In *Strickland v. Washington*, 104 S.Ct. 2052, 2064-68 (1984), the Supreme Court held that a defendant claiming ineffective assistance of

---

[14]The claim is thus unexhausted. But, as we have earlier observed, the State has neither raised nor expressly waived exhaustion, and hence we may deny relief on this claim. See notes 5, 6, and 7 and accompanying text *supra*. We also note that the State does not urge that this claim has been procedurally defaulted.

counsel must show that: 1) trial counsel's performance was deficient; *and* 2) the deficient performance prejudiced the defendant. Daniel's ineffective assistance of counsel claim fails to surmount either *Strickland* hurdle.

According to the affidavit of Judge Rains, it was the custom and practice in Harris county that the judge who accepted the defendant's plea would also impose sentence. Daniel does not dispute that this was in fact the case. In advising Daniel to plead guilty to Judge Hatten, it would certainly have been better for Leitner to explain this longstanding practice and that it was very likely (but not certain) that Judge Hatten would impose sentence; however, Leitner's failure to so explain did not transform Leitner's otherwise good advice into deficient performance. In other words, in light of the undisputedly accurate information Leitner possessed after his discussion with Judge Rains and due to the inherent predictive, probabilistic nature of his assurance that Judge Hatten would impose sentence, Leitner's advice was not so far off the mark as to fall "outside the wide range of professionally competent assistance." *Strickland*, 104 S.Ct. at 2066.

Daniel never formally addresses the prejudice element of *Strickland*, but we glean from his briefs that he finds prejudice in the waiver of his Texas statutory right to be sentenced by a jury, which Daniel attributes to Leitner's bad advice. The record indicates that Daniel was determined to plead guilty and he concedes that he has no federal constitutional or federal statutory right to be sentenced by a

16

jury.

Strickland generally defined prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 2068. However, *Strickland* expressly left open the question of the proper standard for claims of ineffective assistance at noncapital sentencing proceedings. *Id*. at 2064.[15] This Court has held that in the noncapital sentencing context, prejudice requires a showing of a reasonable probability that, absent counsel's unprofessional errors, the noncapital sentence would have been "*significantly* less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (emphasis in original). *See also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (same); *Durrive v. United States*, 4 F.3d 548, 551 (7th Cir. 1993) (quoting with approval this portion of *Spriggs*); *Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir. 1996) (must show "counsel's deficient performance led to a

---

[15]*Strickland* states in this respect:

"We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance. A capital sentencing proceeding like the one involved in this case, however, is sufficiently like a trial in its adversarial format and in the existence of standards for decision . . . (citations omitted) that counsel's role in the proceeding is comparable to counsel's role at trial–to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id.*

'significant' increase in the sentence").[16] In *Glover v. United States*, 121 S.Ct. 696 (2001), the Supreme Court arguably cast doubt on the *Spriggs* "significantly less harsh" rule and may have impliedly rejected it in total.[17] In any event, *Glover* was decided more than three years after Daniel's conviction became final and accordingly cannot be

---

[16]In *Spriggs* we noted that "one foreseeable exception to this requirement" (of showing that but for counsel's error the sentence likely would have been *significantly* less harsh) "would be when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing – such as an automatic increase for a 'career' offender or an enhancement for use of a handgun during a felony – which would not have occurred but for counsel's error". *Id*. at 89 n.4. That potential exception was held inapplicable in *Spriggs*, and is likewise plainly inapplicable here. In *United States v. Phillips*, 210 F.3d 345 (5th Cir. 2000), we, for the first time, applied this *Spriggs* exception. In *Phillips* counsel's deficient performance resulted in an improper obstruction of justice guideline enhancement which raised the defendant's guideline range from 121 to 151 months to 151 to 188 months and defendant was sentenced to 188 months. *Id*. at 351. Nothing remotely comparable is present here.

[17]However, *Glover* can also be fairly read as applying the *Spriggs* exception described in note 16, *supra*. In *Glover* the Court assumed *arguendo* that counsel's deficient performance in respect to whether the offenses of conviction should be grouped for purposes of the guidelines led to an improper guideline range increase of from 63 to 78 months to 78 to 97 months, and the defendant's sentence was 84 months. *Id*., 121 S.Ct. at 699. The Court noted that "the amount by which a defendant's sentence is increased by a particular decision . . . under a determinate system of *constrained discretion* such as the Sentencing Guidelines . . . cannot serve as a bar to a showing of prejudice", and went on to compare *Spriggs*, which it characterized as involving "the Texas discretionary sentencing scheme" with *Phillips* (see note 16, *supra*) which it stated involved "the Sentencing Guidelines." *Glover* at 701 (emphasis added). The *Glover* opinion then continues by stating "Here we consider the sentencing calculation itself, a calculation resulting from a ruling which, if it had been error, would have been correctable on appeal". *Id. Here we deal with the Texas discretionary sentencing scheme, not with a system of "constrained discretion"* and we do not deal with a claimed ruling which affects "the sentencing calculation."

18

considered as a basis for relief unless one of the two *Teague* exceptions applies. We hold that neither exception is applicable. Consequently, *Spriggs* states the applicable test.

Daniel's claim that counsel's deficient performance resulted in a non-preferred sentencing proceeding is not precisely the same as claiming ineffective assistance during a particular sentencing proceeding. However, advice concerning the choice of sentencing proceeding certainly constitutes assistance in the noncapital sentencing context and is, therefore, governed by the principles set forth in *Spriggs*. Daniel does not even attempt to make the *Spriggs*-required showing that the jury would have sentenced him *significantly* less harshly than Judge Bacon.

The Supreme Court has elaborated on *Strickland's* prejudice requirement in two other potentially relevant situations. First, in *Hill*, the Supreme Court applied *Strickland* to claims of ineffective assistance arising out of the plea process. *Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985). Hill's counsel erroneously informed him that he would be eligible for parole after serving one-third of his sentence. In fact, Hill would not be so eligible until serving half of his sentence. *Id*. at 368. To establish prejudice in this context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 370. In Hill's situation, which is typical, the defendant has only two choices: plead guilty and be sentenced by a

19

judge or stand trial. *Hill* simply recognized that unless the defendant could show that absent defense counsel's bad advice he would have stood trial, there was no possibility of prejudice because the defendant would have nothing else to do except exactly what he did–plead guilty.

Significantly, Daniel had a choice not open to Hill: sentencing by a jury. *Hill* should not be read as a definitive statement from the Supreme Court that defendants in Daniel's situation can only establish prejudice by claiming they would have stood trial. *Hill* does not itself necessarily foreclose Daniel's prejudice argument. However, *Hill*'s silence concerning Daniel's unique situation is inadequate to render a finding of prejudice *dictated* by existing precedent, especially in light of our decision in *Spriggs*.

Second, in *Roe v. Flores-Ortega*, 120 S.Ct. 1029, 1038 (2000), the Supreme Court considered the meaning of prejudice in the context of a claim that defense counsel failed to consult with the defendant regarding the first appeal as of right. Consistent with *Hill*, *Flores-Ortega* held that prejudice requires showing a reasonable probability that, absent defense counsel's failure to consult, an appeal would have been taken. *Id*. at 1039. *Flores-Ortega* was decided over two years after Daniel's conviction became final and therefore cannot be considered as a basis for relief unless one of the two *Teague* exceptions is satisfied. We hold that neither is. In any event, we agree with the district court that the rule of *Flores-Ortega* does not help Daniel because he did not forfeit an entire judicial proceeding–he simply chose

20

one sentencing proceeding over another.

A state court would not have been compelled by precedent existing when Daniel's conviction became final to find that Leitner's performance was constitutionally deficient or that the alleged deficiency in Leitner's performance resulted in prejudice. Thus, *Teague's* non-retroactivity rule precludes relief unless the new rules Daniel seeks fall into one of the exceptions to the rule. The two exceptions are for new rules that: (1) place certain kinds of "primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; or (2) are implicit in the concept of ordered liberty. *Fisher*, 169 F.3d at 306. The first exception is clearly not implicated here.

As to deficient performance, Leitner's statement that Judge Hatten would be the sentencing judge was clearly reasonably based on the longstanding custom of the Harris County courts. His failure to foresee that in this one instance it would not (for some unknown reason) be followed, or to be more precise in his explanation, does not call into question protections implicit in the concept of ordered liberty.

Likewise, Daniel cannot show prejudice under any plausible standard. In his affidavit, Daniel states that if he had known Judge Bacon would sentence him instead of Judge Hatten, he would have pleaded guilty to the jury. Leitner's alleged deficient performance concerned his purported *assurance* that Judge Hatten would impose sentence, *not his failure to predict that time-honored custom would be abandoned*. In

21

other words, but for the deficient component of counsel's advice, Daniel would have been told that, based on custom in the Harris County criminal courthouse, Judge Hatten would *probably* impose sentence. Daniel would not have been told that Judge Bacon would impose sentence. Had Leitner completely explained the time-honored custom of Harris County and advised Daniel to plead guilty to Judge Hatten, it seems very likely that Daniel would have accepted that advice. He did not state otherwise in his affidavit, briefs or at oral argument, and there is nothing in the record that suggests Daniel may have rejected such advice. A rule that allowed a finding of prejudice where there is absolutely no evidence that, absent counsel's deficient performance, the defendant would have proceeded any differently would be directly contra to *Strickland*, *Hill* and *Flores-Ortega* and is unquestionably not implicit in the concept of ordered liberty.

Daniel has failed to establish deficient performance or prejudice. The district court's grant of summary judgment for the State as to Daniel's ineffective assistance claim is affirmed.

## Conclusion

For the foregoing reasons, the district court's dismissal of Daniel's habeas petition is

AFFIRMED.