United States Court of Appeals
Fifth Circuit

**F I L E D**

May 21, 2004

Charles R. Fulbruge III
Clerk

**REVISED June 8, 2004**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-50310

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GUS PETER GRAMMAS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before EMILIO M. GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Gus Peter Grammas ("Grammas") appeals the district court's denial of his 28 U.S.C. § 2255 motion, arguing that his counsel's performance regarding whether to stand trial or plead guilty was constitutionally deficient. Because Grammas was provided ineffective assistance of counsel, we reverse his conviction and remand for further proceedings.

**I. FACTS AND PROCEEDINGS**

On March 16, 2001, Grammas was convicted of: (1) knowingly altering a Vehicle Identification Number, in violation of 18 U.S.C. § 511(a)(1); and (2) possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Grammas's trial counsel, Buck Harris ("Harris"), failed to realize (and consequently failed to notify Grammas) that his prior convictions were crimes of violence. The Government's indictment states that one of Grammas's prior offenses was for burglary of a building. Previously, Grammas had been convicted of burglary of a habitation—a crime of violence—which raised his base offense level. Harris failed to confirm that the prior conviction related to a burglary of a building, and admitted post-conviction that "the defense did rely on that original contention that this was a burglary of a building." The indictment also alleges a prior felony conviction for escape.

Harris argued to the district court his mistaken belief that the firearms offense should carry a base offense level of 8, not 20. The relevant section of the Sentencing Guidelines (§ 2K2.1) does not even contain a base offense level of 8. *See* U.S. SENTENCING GUIDELINES MANUAL § 2K2.1 (2001). Harris admitted to having used the wrong section of the Guidelines, and Harris (mis)informed Grammas that he faced only 6 to 12 months if convicted. Grammas was sentenced using a base offense level of 21 (20 from Guidelines § 2K2.1, plus 1 from a prior conviction involving aiding illegal aliens), resulting in a Guidelines range of 70 to 87 months, and a sentence of 70 months in prison.

After exhausting his direct appeals,[1] Grammas filed this § 2255 motion alleging ineffective

---

[1] This Court reversed the district court's restitution order, but otherwise affirmed its holdings. *United States v. Grammas*, No. 01-50730, 37 Fed. Appx. 88, 2002 WL 971617, at *1 (5th Cir. May 2, 2002).

assistance of counsel. *See* 28 U.S.C. § 2255.[2] The district court denied the § 2255 motion; this Court granted a certificate of appealability "on the issue whether [Grammas] received the effective assistance of counsel relative to his decision to stand trial rather than plead guilty." This appeal follows.

## II. STANDARD OF REVIEW

This Court "review[s] a district court's conclusions with regard to a petitioner's § 2255 claim of ineffective assistance of counsel de novo." *United States v. Conley*, 349 F.3d 837, 839 (5th Cir. 2003) (citing *United States v. Bass*, 310 F.3d 321, 325 (5th Cir.2002); *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir.1994)).

## III. DISCUSSION

A.      Section 2255 relief from federal custody

Section 2255 "provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in his trial court." *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir. 1970). The statute establishes that a prisoner in custody under a sentence of a court established by Congress "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Where there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court *shall vacate and set the judgment aside* and *shall* discharge the prisoner or resentence him *or grant a new trial* or correct the sentence as may appear appropriate." *Id.*

---

[2] This Court generally declines to review ineffective assistance of counsel claims on direct appeal. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Ineffective assistance of counsel claims are more appropriately brought in a 28 U.S.C. § 2255 motion. *United States v. Gordon*, 346 F.3d 135, 136 (5th Cir. 2003).

3

(emphases added).

B.      Ineffective assistance of counsel under *Strickland*

To prevail on an ineffective assistance of counsel claim, Grammas must satisfy the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Grammas must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.* "We have described that standard as requiring that counsel 'research relevant facts and law, or make an informed decision that certain avenues will not be fruitful.'" *Conley*, 349 F.3d at 841 (citations omitted). Second, Grammas must prove that he was prejudiced by counsel's substandard performance. "[T]o prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Conley*, 349 F.3d at 842 (citing and quoting *Glover v. United States*, 531 U.S. 198, 203 (2001), and *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000) (finding prejudice where defendant was sentenced under Guidelines range of 70 to 87 months instead of the proper 57 to 71 months range)). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965).

(1)      Harris's performance fell below an objective level of reasonableness.

"Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or

4

take his chances in court." *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995). "'By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.'" *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003) (alterations in original) (citing and quoting *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998)). Grammas contends that he was denied his constitutional right to effective counsel relative to his decision to stand trial rather than plead guilty. He argues that Harris's performance was deficient because, among other things, Harris was unfamiliar with the Sentencing Guidelines and substantially misstated Grammas's exposure if he were to be found guilty at trial.

Harris conceded these mistakes. Regarding the prior convictions, the Government's indictment states that one of Grammas's prior offenses was for burglary of a building. In reality, Grammas had been previously convicted of burglary of a habitation—a crime of violence—which raised his base offense level. Harris failed to confirm that the prior conviction related to a burglary of a building, admitting that "the defense did rely on that original contention that this was a burglary of a building." Even the most basic research on Grammas's background would have revealed that the prior burglary was a burglary of a habitation. The indictment also alleges a prior felony conviction for escape. This Court decided nearly two years before Grammas's trial that an escape constitutes a crime of violence. *United States v. Ruiz*, 180 F.3d 675, 676-77 (5th Cir. 1999). Had Harris realized that *either one* of Grammas's prior convictions was a crime of violence, Harris would have known that the base offense level would be significantly higher. Harris's mistaken belief that Grammas's prior convictions were not crimes of violence, Harris conceded, "may even have gone to affect whether or not we negotiated any type of plea agreement or settlement agreement considering

the greater exposure."[3]

Harris further demonstrated a complete lack of familiarity with the Guidelines. He admits that he used the incorrect section of the Guidelines, and his argument for a base offense level of 8 illustrates this lack of understanding. Sentencing Guidelines § 2K2.1—the section under which Grammas was sentenced—does not even contain a base offense level of 8. *See* U.S. SENTENCING GUIDELINES MANUAL § 2K2.1 (2001). Harris, based on his misunderstanding of the Guidelines, advised Grammas that he would, at most, be imprisoned for 6 to 12 months if he were to be convicted.[4] Harris's assistance fell well below the objective standard of reasonableness required by *Strickland*.

(2)     Grammas was prejudiced by Harris's deficient performance.

The only remaining issue is whether Grammas was prejudiced by Harris's deficient performance. Grammas's conviction occurred *after* a unanimous Supreme Court in *Glover* rejected

---

[3] Despite this statement by Grammas's trial counsel, the dissent asserts that Grammas "would have likely gone to trial even if his attorney had correctly advised him as to the applicable sentence range." Simply because Grammas's decision to go to trial was "influenced" by factors "other than the applicable sentence range," does not, as the dissent maintains, lead to the conclusion that ignorance as to the true sentencing range was immaterial. Grammas and his counsel both argue that had Grammas's exposure been accurately assessed, he likely would have pleaded guilty, and the Government does not contest this argument.

Furthermore, the dissent's repeated attempts to refute Grammas's petition for relief based on "implicit[ ] conce[ssions]" made therein, *see*, *e.g.*, __ F.3d at __ (dissent at 2), are inappropriate given that Grammas is *pro se*. *Perez v. United States*, 312 F.3d 191, 194-95 & n.13 (5th Cir. 2002) ("[C]ourts have adopted the rule that a *pro se* plaintiff's pleadings are liberally construed.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that allegations in a *pro se* complaint are to be held "to less stringent standards than formal pleadings drafted by lawyers"), and *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this Court "must construe [a *pro se* party's] allegations and briefs more permissively")).

[4] The Government's non-responsive and off-topic brief does not contest Grammas's claim that Harris told him his exposure would be 6 to 12 months. Arguments not made in the briefs are waived. *See*, *e.g.*, *Hobbs v. Hawkins*, 968 F.2d 471, 474 n.2 (5th Cir. 1992).

the Seventh Circuit's rule that "a minimal amount of additional time in prison cannot constitute prejudice." *Glover*, 531 U.S. at 203. The Supreme Court noted that, "[q]uite to the contrary, our jurisprudence suggests that *any* amount of actual jail time has Sixth Amendment significance." *Id.* (emphasis added). In a recent case this Court analyzed the prejudice prong by considering whether the petitioner could "demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." *Ridgeway*, 321 F.3d at 515 (quoting *Daniel v. Cockrell*, 283 F.3d 697, 706 (5th Cir. 2002)). However, we noted in *Ridgeway* that *Glover* "arguably casts doubt on the 'significantly less harsh test,'" *Ridgeway*, 321 F.3d at 515 n.2 (quotations and citations omitted), and implied that the "significantly less harsh test" only applied in *Ridgeway* because *Glover* does not apply retroactively. *Ridgeway*, 321 F.3d at 515 n.2. We hold that *Glover* abrogates the significantly less harsh test, and that *any* additional time in prison has constitutional significance. *Accord Conley*, 349 F.3d at 842 (noting that "of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test") (citing and quoting *Glover*, 531 U.S. at 203, and *Franks*, 230 F.3d at 815 (finding prejudice where, as here, defendant was sentenced under Guidelines range of 70 to 87 months instead of the proper range of 57 to 71 months)).

Grammas argues that he suffered prejudice because Harris's assessment that Grammas only would face 6 to 12 months imprisonment grossly underestimated Grammas's 70-month sentence. Had he known about his greater sentencing exposure, Grammas maintains, he would have been far more likely to plead guilty (and thereby avail himself of the Guidelines § 3E1.1 reduction for acceptance of responsibility) rather than to proceed to trial. *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2001). Had Grammas decided to plead guilty he likely would have received a 2-

7

to 3-point reduction in base offense level for acceptance of responsibility. *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2001); *United States v. Baker*, 78 Fed. Appx. 318, 321 (5th Cir. 2003) (unpublished opinion) ("Section 3E1.1 applies '[i]f the defendant clearly demonstrates acceptance of responsibility for his offense.'").

Grammas's decision not to plead guilty likely led to a longer term of imprisonment. Grammas faced no statutory minimum term of imprisonment for the two counts of his conviction. *See* 18 U.S.C. §§ 511(a)(1), 922(g)(1), 924(a)(2). Grammas's base offense level, given the gun conviction and prior convictions for crimes of violence, was 21; he had a criminal history category of 5; and he was subject to a sentencing range of 70 to 87 months. *See* U.S. SENTENCING GUIDELINES MANUAL Ch. 5 Pt. A (2001). The district court imposed the minimum, 70-month sentence. Had Grammas received the 2-point deduction for acceptance of responsibility in Guidelines § 3E1.1(a), the Guidelines range would have been 57 to 71 months. *Id.*; U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a). Had Grammas pleaded before the Government allocated resources to preparing for trial and received the additional 1-point deduction in Sentencing Guidelines § 3E1.1(b), the Guidelines range would have been 51 to 63 months. *Id.*

Because Grammas was convicted after *Glover* was decided, *Glover* applies to Grammas's case. Grammas was sentenced to at least 7 and up to 19 months more time than he would have received had he pleaded guilty and qualified for a three point reduction under Guidelines § 3E1.1(b). Had Grammas only received a 2-point reduction under Guidelines § 3E1.1.(a), he still would have been eligible for a 13-month shorter sentence (the court sentenced Grammas at the absolute bottom of the Guidelines range). Grammas's sentence would *not* have decreased only if he received the 2-point reduction and were then sentenced to the maximum sentence in that range (i.e., 71-months).

While it is impossible to know whether Grammas would have received either a 2- or 3-point reduction, and where within the range he would have been sentenced, Grammas has demonstrated a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different" because he would have received a lesser sentence. *Conley*, 349 F.3d at 841-42 (citations and quotations omitted). Consequently, Grammas has demonstrated that he was prejudiced by Harris's deficient performance, satisfying *Strickland*'s second prong.

The dissent maintains that Grammas was not prejudiced because he was not "misled by trial counsel concerning his eligibility for a 2-point reduction under § 3E1.1(a)." However, the dissent ignores Grammas's argument that the deficient performance of his counsel led to a longer sentence, regardless of whether that sentence was within the statutory limits. Grammas maintains—and the Government does not contest—that had he known of his true sentencing exposure, he would have sought out a plea bargain or would have pleaded guilty to avail himself of the acceptance of responsibility decrease in sentencing. *See* U.S.S.G. § 3E1.1.

We find a reasonable probability that, had constitutionally sufficient counsel informed Grammas of his true exposure, Grammas would have pleaded guilty and thereby would have been sentenced to less time in prison.[5] This Court has long recognized that to show prejudice, a defendant "must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." *United States v. Ridgeway*, 321 F.3d 512, 515 (5th Cir. 2003) (E. M. Garza, J.) (discussing potential prejudice resulting from counsel's alleged failure to inform the defendant of his sentencing exposure if he proceeded to trial instead of pleading guilty, but finding

---

[5] The dissent's focus on the unavailability of a plea bargain is misplaced. Our holding rests on the reasonable probability of a lesser sentence had Grammas pleaded guilty, *see* U.S.S.G. § 3E1.1, regardless of whether the Government offered a plea bargain.

no prejudice because the 120-month sentence the defendant might have received had he pleaded guilty was not "significantly less harsh" than the 121-month sentence he received after being found guilty at trial). Our holding today recognizes that the Supreme Court's decision in *Glover v. United States*, 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance"), abrogates our "significantly less harsh" test and replaces it with the "any amount of jail time" test. *See supra*. The dissent does not challenge our reading of *Glover*, and aside from the change in law mandated by *Glover*, this opinion faithfully follows the dictates of this Court as explained in *Ridgeway*.

Tellingly, even after admitting that Grammas's counsel's performance was deficient, and assuming that Grammas was prejudiced by that deficient performance, the dissent contends that this opinion "improperly vacates [Grammas's] convictions." The dissent takes the curious position that a defendant whose counsel is deficient in a way that is prejudicial to the defendant—thereby satisfying both prongs of *Strickland*'s constitutionally ineffective counsel test—can nonetheless be "rightly convicted pursuant to a constitutionally valid trial . . . ." That, to us, seems a "bizarre result" indeed.

Perhaps this is another method of arguing that Grammas was not prejudiced by counsel's performance. *See supra*. However, it seems highly incongruous to assume *arguendo* that counsel was constitutionally defective and yet still conclude, as the dissent does, that "there was no error in adjudication of . . . guilt or in the rendering of judgment . . . ." Because a defendant cannot be convicted absent the effective assistance of counsel (or a voluntary, knowing and intelligent waiver of such counsel), *see* U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 687 (1984), we think it inappropriate to describe a defendant convicted without the effective assistance of counsel (or without a valid waiver) as "rightly convicted."

10

## IV. CONCLUSION

Grammas demonstrates that Harris provided ineffective assistance of counsel in violation of the Sixth Amendment. Because Harris's deficient performance infected Grammas's decision whether to plead guilty, Grammas's conviction itself must be reversed so that Grammas has the opportunity to decide how to plead without the taint of ineffective assistance of counsel. Therefore, the district court's denial of Grammas's § 2255 motion is REVERSED, Grammas's conviction is VACATED, and this case is REMANDED for a new trial or other disposition not inconsistent with this opinion.

EMILIO M. GARZA, Circuit Judge, dissenting.

The majority opinion fails to address Grammas's ineffective assistance of counsel claim at the level of specificity required to address the issues presented in this appeal. Because of this generalized approach, the majority opinion incorrectly concludes that Grammas was prejudiced by his trial counsel's deficient performance. Grammas fails to establish a causal connection between his attorney's conduct and the alleged prejudice)) the opportunity of a 2 or 3-point reduction to his offense level for admission of guilt. Further, the majority opinion improperly vacates Grammas's convictions without establishing either a deficiency in the judgment or the process by which the judgment was imposed. Accordingly, I respectfully dissent.

I agree with the majority opinion that Harris, Grammas's trial counsel, provided deficient advice by failing to ascertain that two of Grammas's prior crimes were "crimes of violence" under § 2K2.1, and by consequently not informing Grammas of the proper sentencing range for the crimes for which he was charged. This Grammas contends, and the majority opinion concludes, induced him to go to trial rather than to plead guilty. At first blush, and at this level of generality, Grammas's contention might appear to be beyond reproach. However, Grammas's own words should cause the majority to question its conclusion. At his sentencing hearing, Grammas explained that "I was never offered a plea bargain or a [§ 5K1] departure. *I had no alternative* but to take it to trial and prove my innocence." *See* Petitioner's Brief, p. 22 (quoting R-6, Sentencing Hearing Transcript, p. 324) (emphasis added). This statement to the sentencing court directly contradicts Grammas's contention to this Court that his decision to go to trial was driven by what was then his understanding of the potential length of his sentence. Further, Grammas admits in his brief that his decision to go to trial was directly influenced by his attorney's advice "not to worry because the government *could not get*

12

*a conviction* because Mr. Grammas was not in 'actual possession' of the said firearm." Petitioner's Brief, p. 2, 17 (emphasis added). Grammas has thus twice conceded that factors other than his attorney's advice concerning his sentencing range drove him to decide to go to trial rather than to plead guilty.[6]

More importantly, as a matter of law, Grammas was not prejudiced: Harris's failure to determine, and inform Grammas, that his prior crimes of violence would increase his sentencing range did not prejudice Grammas because his sentencing range under § 2K2.1 was not affected by his decision to go to trial. The applicable sentencing range would have been the same whether Grammas had pled guilty or had his guilt determined by trial. Thus Harris's failure to ascertain and properly advise Grammas as to the effect of his previous crimes of violence on his potential sentence made him no worse off as to his sentencing range than he would have been had his attorney provided him with accurate information.

The majority opinion must use a separate basis for establishing prejudice. It finds that Grammas was prejudiced because he was denied the *opportunity* to receive a reduction in his offense level for acceptance of responsibility, *see* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2001),

---

[6] The majority claims that acknowledging these concessions is "inappropriate" because they were included in Grammas's *pro se* pleadings. *See* ___ F.3d at ___ n.3. (majority opinion at 6 n.3) (citing *Perez v. United States*, 312 F.3d 191, 194-95 & n.13 (5th Cir. 2002)). The majority's concern regarding *pro se* pleadings does not apply to Grammas's first statement because Grammas made that statement at his sentencing hearing, when he was represented by counsel. Consideration of the second statement is also appropriate because it was one of the factual allegations underlying Grammas's claim for habeas relief and not a legal argument. We liberally construed the *pro se* pleadings in *Perez* to avoid "punishing [the *pro se* plaintiff] for lacking the linguistic and analytical skills of a trained lawyer" because courts adopted the rule requiring liberal construction of *pro se* pleadings precisely to prevent such a result. *Perez*, 312 F.3d at 195. The liberal construction of *pro se* pleadings does not preclude reliance upon the factual statements contained within those pleadings and on which Grammas himself relies in order to establish his habeas claim.

13

or, in the alternative, that he would have sought a plea bargain. Assuming the *opportunity* for reduction in a petitioner's offense level can constitute prejudice,[7] Grammas does not allege, or argue, that he was misled by his trial counsel concerning his eligibility under § 3E1.1 for a reduction to his offense level. Grammas implicitly concedes that he knew that he would have been eligible for a reduction to his offense level had he pled guilty and that by making the decision to go to trial rather than plead guilty he was most likely forfeiting that opportunity in exchange for the possibility of an acquittal.[8]

The district court found that there is no evidence suggesting that the Government would have accepted a plea bargain offer from Grammas, or that it would have offered one of its own. This conclusion is not clearly erroneous. *See Dison v. Whitley*, 20 F.3d 185, 186 (5th Cir. 1994) ("We review the district court's findings of fact for clear error."). Grammas admitted at his sentencing hearing that the Government had not offered him a plea bargain, *see* R-6, Sentencing Hearing Transcript, p. 324, and there is no evidence suggesting that the Government would have offered him one had he asked. Additionally, Grammas has never suggested that he had anything to offer the Government in exchange for a plea bargain. The majority opinion, however, simply surmises that the Government would have offered him one despite the district court's conclusion otherwise.

---

[7] The majority opinion properly admits that the sentencing court may not have granted Grammas this reduction even if he had pleaded guilty. Of course, Grammas may still not receive this reduction to his offense level even if he now decides to plead guilty to these charges.

[8] Grammas was not foreclosed from receiving a reduction to his offense level simply because he decided to go to trial rather than plead guilty. *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, cmt. n.2 ("Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial.").

To establish *Strickland* prejudice a petitioner must not only prove that he was prejudiced in the proceedings, he must also prove that his counsel's errors caused that prejudice. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052 (1984) ("The defendant must show that . . . *but for* counsel's unprofessional errors, the result of the proceeding would have been different.") (emphasis added); *Buxton v. Lynaugh*, 879 F.2d 140, 147 (5th Cir. 1989) (The petitioner must show that "the failure of his counsel *caused* [him] to suffer prejudice.") (emphasis added). Grammas is unable to establish a causal connection between his trial counsel's deficient conduct under § 2K2.1 and the prejudice he alleges he suffered under § 3E1.1.

The majority opinion concludes that Grammas was generally prejudiced because the effect of his decision not to plead guilty was the lengthening of his actual sentence if not his sentencing range. However, the majority opinion is unable to cite a single case where we have found *Strickland* prejudice when there was no direct casual relationship between the attorney's deficient conduct under § 2K2.1 and the specific prejudice alleged by the petitioner under § 3E1.1. This highlights the unprecedented nature of its conclusion.

Grammas knew that if he went to trial he would most likely be giving up the opportunity to receive a reduction to his offense level for acceptance of responsibility. He cannot now come before this Court and claim that he was prejudiced by his informed decision to give up that opportunity. Had Grammas established that had he pleaded guilty his *sentencing range* would have been less than it was after he went to trial then he would have established prejudice sufficient to sustain this *Strickland* claim. However, he has not, and cannot, meet this burden as his sentencing range was not affected by that decision.

Even assuming Grammas was able to establish *Strickland* prejudice the majority opinion

15

improperly vacates his convictions. Grammas has not established any deficiency in the adjudication of his guilt or in the calculation of his sentence. *See* 28 U.S.C. § 2255. Grammas is thus properly in federal custody and is not entitled to habeas corpus relief.

After a fair and constitutionally sound trial, Grammas was found guilty of knowingly altering a Vehicle Identification Number and being a felon in possession of a firearm. In his habeas petition, Grammas does not challenge his convictions. In fact, Grammas seeks only the opportunity to plead guilty to the charges. There is little doubt as to Grammas's guilt and there is no doubt as to the validity of the judgment rendered against him.

Grammas also does not challenge the legal validity of the sentence imposed against him. He does not argue that his sentence is in excess of the maximum authorized by law, nor does he claim that the sentencing court misapplied the Sentencing Guidelines or in some other way erred in calculating or imposing his sentence. Grammas seeks relief not authorized by § 2255.

The federal habeas statute provides for habeas relief if either the petitioner's judgment or sentence is in some way unlawful. *See* 28 U.S.C. § 2255 (providing that a petitioner's conviction should be set aside if "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack"); *Thomas v. United States*, 368 F.2d 941, 944 (5th Cir. 1966) ("Where the sentence is within the limit set by the statute, we are barred, except in the most exceptional circumstances, from any inquiry we might be otherwise inclined to take."). Consistent with this principle we generally grant habeas relief when there has been some error in either the judgment or the process of determining the judgment, *see e.g. United States v. Guerra*, 94 F.3d 989 (5th Cir. 1996) (overturning

16

conviction because plea was made involuntarily), or, the sentence or the process of imposing the sentence, *see e.g. United States v. Conley*, 349 F.3d 837 (5th Cir. 2003) (vacating sentence because trial counsel failed to object to imposition of improper sentence).

There are no such errors in this case. There was no error in the adjudication of Grammas's guilt or in the rendering of judgment against him, nor was there any error in the imposition or calculation of his sentence. Consequently, granting habeas relief in this case involves freeing from custody an individual who was rightly convicted pursuant to a constitutionally valid trial where the sentence imposed is consistent with the requirements of the law. The habeas statute does not provide for this bizarre result, notwithstanding the majority opinion's claims otherwise.

Further, the majority opinion vacates Grammas's judgment presumably so that he can now plead guilty to these charges and receive a reduction in his sentence. The reasoning behind this result, at minimum, presumes that to the extent that Harris provided ineffective assistance of counsel, that ineffective assistance did not prejudice Grammas in regards to the judgment rendered against him. This absence of prejudice regarding Grammas's judgment explains why the majority now expects him to plead guilty and voluntarily re-institute the convictions it now vacates. However, despite Grammas's contention that he would have, and will now, plead guilty to these charges the majority opinion's approach to this case does not guarantee that result. Grammas may yet again decide to not plead guilty and take his chances with a second trial. At best, this means that Grammas will be furnished with another opportunity to contest his guilt despite having already been found guilty by the one constitutionally sound trial he is guaranteed under the law. At worst, it means that Grammas may go free despite having already been properly adjudicated guilty and having all but confessed to his crimes in his petition to this Court.

17

Lastly, to the extent that the facts before us are conflicted we have a duty to remand to the district court for findings of fact. *See Shinall v. Breazeale*, 404 F.2d 785, 787 (5th Cir. 1968) (finding that case should be remanded to district court because findings of fact necessary to grant habeas relief were not made by district court); *Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir. 2003) (citing cases).

Accordingly, I respectfully dissent.